**Introduction**

This is an appeal of Judge Peck's decision denying plaintiff-creditors' motion to permit late filing of their proof(s) of claim. The creditors herein were former employees of defendant-debtor NYRA, (hereinafter NYRA), who brought claims against NYRA for violations of state and federal wage and Human Rights law. NYRA had full knowledge of the employees and their claims, as they had brought suit in both federal and state court, and debtor had provided plaintiffs' counsel with information related to same during settlement negotiations prior to class certification. NYRA also listed the claims in its disclosure statement. Judge Peck determined that the one claim form that had been filed on behalf of the class members was invalid as to all but the lead plaintiff-creditor Etchemendy. Once it was determined that Etchemendy's claim was valid, the debtor swiftly settled same in the amount of $82,500. This appeal is brought by the remaining three plaintiff-creditors.

**Facts**

On or about November 2, 2007, Debtor, New York Racing Association, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. After the Third Amended Plan was approved, such plan provided for 100% pay out to creditors.

In connection with the Debtor's bankruptcy filing, Mario Etchemendy, a person who is not party to this appeal, timely submitted a Proof of Claim.[12] This claim was numbered "579." The additional creditors who are parties to this appeal are three co-workers of Etchemendy who filed informal proofs of claim related to that of Etchemendy.

1

The creditor-appellants are Eugenia Ayuso, Fabian Cabrales and Richard Gazer[1].
Two of these creditors, Ayuso and Cabrales, were <u>never</u> mailed notice of the bankruptcy
proceedings because they were former employees of NYRA, which fact was admitted by
NYRA. [93 ]The third, Richard Gazer, was allegedly sent notice but did not receive
same.[93]

The facts of Etchemendy's claims were related to his employment with NYRA.
On or about June 6, 2006, he filed two (2) lawsuits against Debtor to recover unpaid
overtime wages, penalties and liquidated damages. The suits were filed in federal court
and state court, Queens County, respectively. The suits were based on violations of the
Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et. seq.*, and the New York State
Labor Law § 190, *et. seq.*

The federal suit was a collective action on behalf of Etchemendy and all other
similarly situated employees against NYRA pursuant to Section 216(b) of the FLSA filed
in the United States District Court, Eastern District of New York.[620;630] NYRA
interposed an answer to the complaint on June 30, 2006. Thereafter, the parties engaged
in serious settlement discussions.  In the course of these negotiations, NYRA provided
Plaintiff's counsel with a list identifying eighteen (18) employees similarly situated to
Etchemendy[2].[12-18]  Because of the extent of the settlement negotiations, no motion
was made in the district court to certify the class, as same would have been
counterproductive at such time. [59-60]

---

[1] The Notice of Appeal included a fourth party, Donaldo Mack. Mack subsequently has withdrawn his
claims on appeal.
[2] This appeal also raises issues as to whether the remaining similarly situated employees should be entitled
to bring their claims due to the fact that the Judge's determination as to the validity of the class claim was
erroneous.

**The Nature of the Creditors' work**:

Etchemendy, who is still employed by NYRA, had been employed by NYRA from October 20, 1988 through present. [319-320] He typically worked twelve (12) hours per day, and alternated between working five (5) and six (6) days per week .[319-320] He works as a "Jockey Valet" from 11:30 am, to approximately 6:00 p.m. .[319-320] His primary responsibility as valet is to saddle the horses prior to race time. For approximately a year he also worked as a "Clocker" from 5:30 a.m. to approximately 10:30 a.m. In that position he timed the horses. Each summer, he also works at Saratoga Racetrack. When working at Saratoga, Etchemendy works from 10:30 a.m. to 6:30 p.m., six (6) days per week. .[319-320]

Ayuso, Cabrales and Gazer each also worked two jobs while employed by NYRA. Ayuso was employed as a "Gap Attendant" and as a "Numbers Clerk." At the first job, Ayuso worked from approximately 5:30 a.m. until 10:00 a.m. and from approximately 10:30 a.m. until approximately 5:00 p.m., at the second job. The first job was five days a week, and the gap attendant job was seven (7) days a week. [468-470] Cabrales held the same positions as Ayuso, and Gazer held positions as "clocker," timing horses seven days a week from 5:30 a.m. to 10:30 a.m. and then as a "proofer," making sure that horses due to race the next day performed the necessary number of workouts, five days a week. [347-348]]

**The Proof of Claim**

The proof of claim at issue herein [12-18] was timely filed on June 4, 2007. It consisted of a standard "B10" form, a six-page attachment, and a cover letter informing the Court that the claim was being filed on behalf of a class with specific information

about the claims contained therein. The form had been sent to Etchemendy through his attorney[3], by the Debtor. In the name and address section it listed the creditor as "Mario Etchemendy," and in the address section was "Mario Etchemendy, Individually and as Class Representative."

The attachment listed seventeen similarly situated employees in addition to Etchemendy, with the causes of action that each plaintiff was asserting against NYRA. In two instances, parties' names are listed twice because such parties listed either age, race and/or gender discrimination as causes of action in addition to wage claims.

The documentation lists damages in the form of wages and overtime "to be determined" and notes in footnote form that NYRA has "payroll information regarding underpayment of wages and overtime." It also estimates the value of each discrimination claim, liquidated damages, and punitive damages. The cover letter attached estimates the total claims to be within a $20-$30 million dollar range.

In response to Etchemendy's claim together with those of appellants herein, the debtor brought an omnibus objection and moved to expunge same. It is important to note that this occurred six months <u>after</u> the class proof of claim had been filed in the bankruptcy court. Numerous motions were brought by the parties, including, but not limited to, several emergency motions and an order to show cause, whereby several hearings were held before Judge Peck.

After three hearings, Judge Peck ultimately ruled that Etchemendy's claim was viable but those of Ayuso, Cabrales and Gazer were not. This appeal ensued.

---

[3] It is important to note that the Debtor sent <u>one</u> proof of claim form to Etchemendy's attorneys, which was completed by them and timely filed. The debtors knew from settlement negotiations that the attorneys represented several employees. It is interesting to note that Debtor provided the form, it was properly completed, and then Debtor challenged the form of same.

**The Bankruptcy Proceedings:**

**December 20, 2007**

NYRA filed an omnibus objection to Mario Etchemendy's claim[4], seeking to deny liability as to same and to have the entire claim expunged.[31] On December 20, 2007, the first of several hearings on the matter of NYRA employees' claims was held before Judge Peck. During such hearing, debtor's counsel sought to deny liability as to Etchemendy's claim, and, in the alternative, sought to have same evaluated in the range of approximately $130,000.00 [31] The debtor's position was that if the claim were to survive at all, it could only survive as an individual claim. At the hearing, the debtor's attorney further implied that the entire Chapter 11 plan would be jeopardized by allowing any of the NYRA employees to bring wage claims against the Debtor at such a late date.

Judge Peck admitted his personal preferences in which he believed that the class action process is something "which should be deployed in bankruptcy sparingly."[41] He further indicated that the issues before him raised questions regarding form over substance:[36]

> In order for a class representative to file a class proof of claim there is [*sic*] procedural hurdles [that] need to be overcome. None of which appear to have been overcome here.

To which plaintiff's counsel responded: [36]

> ...[W]e would just request that we be given a brief period to cure those deficiencies. Essentially, it seems to me that the arguments that have been raised in this motion are asking the Court to put form over substance, Your Honor. They're well aware of the extent of these claims because they've provided their

---

[4] NYRA and plaintiff Etchemendy had been involved in serious settlement negotiations for over six months as to his claim and the claims of the other employees. They received no warning of the impending Chapter 11 filing and no warning that the Debtor would object to the content of the <u>one</u> Proof of Claim form it sent Etchemendy as lead class plaintiff.

own estimate of Mr. Etchemendy's damages. Assuming that the other eighteen individuals that they've identified themselves as being similarly situated employees have similar damages, they have a clear understanding as to the extent of the underpayment of wages that [are] at issue here.

As the hearing continued, the Court indicated that it had already made tentative rulings on the briefs submitted, despite the fact that the law in this area is "not crystal clear."[38-39]

The Judge also indicated that due to where the proceedings were at such time, it was unlikely that he would exercise his discretion in the creditors' favor.[39]

The court's tentative rulings were as follows:

I had several tentative ruling[s] with respect to this matter which I'm prepared to revisit. One is that the claim appears to be a claim of one named individual. And that even though there are attachments in respect to other allegedly similarly situated employees, the claim as filed is an individual claim...To the extent that there are unrepresented individuals who are identified simply because they are part of a purported class. At this point the proof of claim does not constitute a class proof of claim. And I think is subject to being expunged as to those individuals because of the procedural requirements of 9014 and rule 123 have not been followed.[40]

I am prepared however, to give you a hearing date.... But I'm letting you know now based upon my review that I think it unlikely, no matter what you filed, that I'm going to change my preliminary views. [40]

**January 11, 2008 Hearing:**

At the January 11, 2008 hearing, counsel for the Debtor first addressed the Court, during which time he argued that all of the creditors' claims were either invalid or should be expunged because the creditors "have neither satisfied the procedural requirements nor the substantive preconditions for the alternative relief [of requesting that the claims be allowed as individual claims of the listed parties]."[53-54]

The creditors' counsel, however, explained several factors to the Judge relative to why individual claims should be permitted, and/or why counsel had listed the parties in

the manner it had on the Proof of Claim form.  First, he outlined section 216(b) of the

FLSA, which provisions are more akin to permissive joinder than to FRCP 23 class

action proceedings:

> …Under 216(b) of the FLSA, the collective action, it's more like a permissive
> joinder, Your Honor. And there's no requirement minimum threshold for -- for
> joinder. So there need not be forty employees. Indeed, we've had cases in our
> office of collective actions under the FLSA involving twenty employees. So the
> numerosity requirement of Rule 23 is not applicable in this case[5]. This is more
> like permissive joinder, and if the court were to decide that permissive joinder in
> this case, for some reason or another, would be inefficient then you could simply -
> - the court could simply allow those claims to proceed  i n d i v i d u a lly .[64]

Second, counsel informed the court that contrary to the Debtor's position, it had

extensive actual knowledge of the creditors' claims:

> Your Honor, I do believe that there are reasons to revisit the tentative rulings
> made at the last hearing. It seems to me that NYRA's arguments are based,
> essentially, on a fiction. And that fiction is that NYRA did not understand that
> Etchemendy's claim 579 represented a claim in a representative capacity based on
> the eighteen similarly situated employees that NYRA had already identified as
> such to p l a i n t i f f ' s counsel. Throughout the course of the bankruptcy
> proceedings negotiations were ongoing. NYRA estimated, certainly
> understood, that the claim was on behalf of not only  Mr.Etchemendy but on
> behalf of the other eighteen employees Because they analyzed the damages or
> potential damages for each and every one of those eighteen employees.[54]

While the Judge clarified that Rule 408 of the Federal Rules precluded evidence

related to the content of settlement discussions, he took notice of the fact that such

negotiations took place, and indicated that "there may have been some [either] lulling or

reliance[6]:"[55]

---

[5] The strict requirements of Fed.R.Civ.P.Rule 23 do not apply to FLSA "collective actions." 29 U.S.C.sect.
216(b). No showing of numerosity, typicality, commonality and representativeness need be made. *Hoffman
v. Sbarro, Inc.,*.982 F.Supp. 249 (S.D.N.Y. 1997) Rather, a threshold issue is whether plaintiffs have
demonstrated that potential class members are "similarly situated." This burden may be met by "making a
modest factual showing" sufficient to demonstrate that potential plaintiffs were "victims of a common
policy or plan that violated the law."*Id* .It is clear on the facts herein that plaintiff-creditors met this
threshold issue.

[6] On the issue of "lulling or reliance," although the Judge mentioned it, he did not make a further
assessment as to same. As the facts herein demonstrate, Debtor itself sent a customized Proof of claim form

…I think the fact of settlement negotiations is different from the substance and content of settlement negotiations. And I agree with you that there is no harm, certainly now, in referencing that such discussions took place.[55]

On the issue of no prejudice to the debtor and other creditors, Etchemendy's

counsel continued:

The plan here, from my understanding, contemplates payment in full, dollar per dollar. There certainly hasn't been any representations made that there is insufficient amount of money to cover the claims of the eighteen employees, based upon their calculation of what those damages amount to.[62]

And on the relative equities of wage claims and the ultimate deterrent effect of the

creditors' claims before the court, he stated:

Here… the plan contemplates that NYRA will continue to be viable. They will continue to have employees and will continue to either pay those employees overtime or not pay overtime in accordance with state and federal law.[62]

### **The Judge's Rulings:**

The judge stated on the record that his rulings were related to the "orderly

administration" of a bankruptcy case in which "there are issues as to feasibility which

issues fundamentally come down to "[whether] there [will] be sufficient dollars to satisfy

the debtor's commitments under the plan.'"[76] On the ultimate issue of whether the

Etchemendy group would be permitted to file individual claims, the court stated:

Counsel for Mr. Etchemendy…requests that leave be granted for each of the eighteen or nineteen individuals to now file individual claims. That request is inappropriate now for several reasons. First, the only way to consider relief under Rule 9006(b)(1) is for a motion setting forth cause to be filed by the aggrieved claimant. No such motion has been filed by any claimant.[78]

---

to the lead plaintiff (see footnotes 2 and 3), then after six months of settlement negotiations abruptly brought an objection to Etchemendy's class claim. At a minimum, the Judge should have assessed what effect the customized proof of claim form had on plaintiff-creditor and whether it was misleading. The Judge failed to do so.

Further, the Court erroneously believed that <u>all</u> of the purported class members had received actual notice of the bar date." [78-79] This misconception influenced the Court's ultimate ruling:

> In making the comments that I have made with regard to the request for an extension of time for individual claimants to file proofs of claim late, I do not prejudice the right of any such individual with counsel...to file a motion seeking leave to file a late claim. I don't pre-judge now whether or not cause can be shown for the ability to file such a late claim but to the extent than any individual claimant had actual knowledge of the bar date and then waited  past the bar date...it would be hard to imagine how such a motion could ever be granted. [79]

**<u>Resolution of Etchemendy's Claim:</u>**

During the break in proceedings on January 11, 2008, once the judge ruled that Etchemendy's claim was viable, the debtor's attorney swiftly settled same with counsel, which agreement was approved by the committee:

> We've agreed to allow claim 579 as an individual claim for Mario Etchemendy alone in the amount of $82,500 dollars...we're prepared to allow it at that amount subject to further documentation...we propose to submit to Your Honor for review and entry. [80]

**<u>February 29, 2008 Hearing</u>:**

Prior to the February 29, 2008 hearing, the three claimants bringing this appeal, to wit, Ayuso, Cabrales and Gazer made a motion for permission to file a late claim. During this hearing, their counsel notified the judge that his assumption made in the prior hearing relative to these claimants' receipt of actual notice was in error:

> With respect to the other four (Ayuso, Cabrales, Gazer and Mack) they've each submitted affidavits attesting that in fact they did not receive actual notice of the bar date, and with respect to two of those, of the four, Ayuso and Cabrales, NYRA acknowledges that their names <u>did</u> <u>not</u> appear on the <u>service</u> <u>list</u>, and that actual notice was not mailed to Ayuso and Cabrales, presumably because they had ceased being employees of NYRA, pre-petition.[93]

Counsel emphasized that NYRA admitted that it failed to mail notice to Ayuso and Cabrales, that these were known creditors, and that due process required that at a minimum, they were entitled to actual notice to preserve their rights.[93]

As to their status as known creditors, counsel referenced an October 4, 2006 letter whereby counsel for NYRA had provided salary information relative to these specific parties:[104;85-6]

> And the point being, Your Honor, is that NYRA was well aware of the fact that overtime claims were being asserted on behalf of Cabrales and Ayuso, regardless of the fact of whether or not they were still employed by NYRA at the time. The date of termination or cessation of employment with NYRA does not change the fact that they were a known creditor.

The judge, however, denied the motion as to all four parties:

> I find that Ayuso and Cabrales had imputed notice, through counsel, of the bar date, regardless of any other source of notice they may have had, which may have also include their general knowledge, from reading the newspaper, that NYRA was in bankruptcy. As to the other two claimants who remain, the mailbox rule applies. The presumption has not been overcome. While it is rebuttable, it is a very strong presumption, and it can only be rebutted by specific facts. There mere denial in an affidavit that says, "I didn't receive notice," does not do the trick. Moreover, these individuals are in the same category as Ayuso and Cabrales, as clients of the firm, they too have imputed knowledge. So, either the mailbox rule applies or imputed notice applies. And there has been a failure to demonstrate that these individuals did not have, either by imputation or actual notice, notice of the bar date that took place in June of 2007.[109-110]

**Argument**

**Standard of Review**

A bankruptcy court's denial of leave to amend a timely-filed Proof of Claim or a request to file a late claim is reviewed for abuse of discretion. *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. ( In re Enron Corp.)*, 419 F.3d 115, 124 (2d Cir.2005); *Integrated Resources, Inc. v. Ameritrust Co. Nat'l Ass'n ( In re Integrated Resources, Inc.)*, 157 B.R. 66, 70, 72 (S.D.N.Y.1993). "A district court abuses its discretion when it applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or proceed[s] on the basis of an erroneous view of the applicable law." *Harris v. Albany County Office ( In re Harris),* 464 F.3d 263, 268 (2d Cir.2006) (internal quotation marks and citation omitted; alteration in original). On appeal, a district court should not set aside a bankruptcy court's findings of fact unless those findings are clearly erroneous. Conclusions of law, however, are reviewed *de novo.* See *In re Ionosphere Clubs,* 124 B.R. 635 (S.D.N.Y.1991). In *In re Chateaugay Corp.,* 104 B.R.626,629(S.D.N.Y.1989), the court stated affirmatively that determinations as to what constitutes a proof of claim is reviewed *de novo.* Under either standard, the decision should be reversed because the judge applied the wrong legal standards as set forth below.

**I.    Because the origins of bankruptcy laws and proceedings are rooted in equity, the Judge's rulings should be overturned.**

It is well-established that "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." *Pepper v. Litton*, 308 U.S. 295,308, 60 S.Ct. 238, U.S. 1939. In exercising its equitable jurisdiction, "the bankruptcy court has the power to sift [through] the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Id.*

11

The Second Circuit and the district courts in both the Southern and Eastern districts have followed this precedent and have consistently applied equitable standards to bankruptcy proceedings. (*cf. Kelleran v. Andrijevic*, 825 F.2d 692,(2nd Cir.987);*Matter of Teltronics Services, Inc.*, 29 B.R. 139, (E.D.N.Y.1983)

**A.      The principles of equity require that form does not prevail over substance**

In the case of *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.*, 249 F.2d 221(2nd Cir. 1957), the court followed such precedent:

> Bankruptcy courts are essentially courts of equity endowed with broad equity powers. These equitable powers have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical consideration will not prevent substantial justice from being done.

**B.      The judge herein did not apply principles of equity in denying the creditors' request to amend the timely filed proof of claim, and/or permit late filing of such proofs of claim.**

**1.      It is well-established that Public policy prefers resolution of matters on the merits.**

**a. Equity permits "informal" proofs of claim in bankruptcy proceedings.**

In the case of *In re Harper*, 138 B.R. 229, 237 (Bkrtcy.N.D.Ind.1991) the court made a thorough and thoughtful analysis of the equitable principles involved in determining under which circumstances an "informal" proof of claim will be allowed. In so doing, the court reviewed precedent throughout the various circuits, determining ultimately that equity demanded flexibility relative to the creditor's filing of proofs of claim:

> The intent of the informal Proof of Claim concept is to alleviate problems with form over substance; that is, equitably preventing the potentially devastating effect of the failure of a creditor to formally comply with the requirements of the Code in the filing of a Proof of Claim, when, in fact, pleadings filed by the party asserting the claim during the claims filing period in a bankruptcy case puts all parties on sufficient notice that a claim is asserted by a particular creditor.

At the time of the *Harper* ruling, the Ninth Circuit had developed a 'rule of

liberality in amendments' to creditors' proofs of claim, the reason for which reverted back

to equitable principles and preference for resolution on the merits:

> The reason for this "liberal" rule is elemental. Bankruptcy courts are courts of
> equity, and must assure "that substance will not give way to form, [and] that
> technical considerations will not prevent substantial justice from being done." The
> "liberal" rule reflects our preference for resolution on the merits, as against strict
> adherence to formalities.

The Southern District case of *In re W.T. Grant Co.* 53 B.R. 417,422 (1985) while

factually distinguishable from the facts at bar, cited Ninth Circuit precedent relative to the

liberality of amendment as follows:

> The facts at bar are clearly distinguishable from two recent Ninth Circuit Court of
> Appeals decisions where amendments to informal claims were permitted....
> [Because]...the court found the documents stated "explicit demand(s) showing
> the nature and amount of the claim(s) against the estate and evidence(d) an intent
> to hold the debtor(s) liable." *In re Pizza of Hawaii,* 761 F.2d 1374, 13 B.C.D. at
> 345; *In re Sambo's Restaurant,* 754 F.2d at 816.

The court's analysis was consistent with the equitable principles:

> Although amendments to proofs of claim should in the absence of contrary
> equitable considerations or prejudice to the opposing party be freely permitted
> [citations omitted], such amendments are not automatic but are allowed where the
> purpose is to <u>cure a defect in the claim as originally filed,</u> to describe the claim
> with greater particularity or to plead a new theory of recovery on the facts set
> forth in the original claim [citations omitted]. But an absolute prerequisite to
> allowance of an amendment is the existence of something filed in the bankruptcy
> court capable of being amended [*In re W.T. Grant Co, supra,* at p.420, emphasis
> added, citations omitted].

In the facts herein, plaintiff-creditors' counsel used these very words in his

request to file late proofs of claim and/or amendments on behalf of his clients:

> Your Honor...we would just request that we be given a brief period to <u>cure those</u>
> <u>deficiencies.</u> Essentially, it seems to me that the arguments...raised...are asking
> the Court to put form over substance. They're well aware of the extent of these
> claims because they've provided their own estimate of Mr. Etchemendy's
> damages.[36]

b.    **The equitable nature of the creditor-plaintiffs' claims herein under the FLSA and New York State Labor Laws required the Judge to permit late filing and/or amendment of their informal proofs of claim.**

The fact that the creditor-plaintiffs' claims herein fall under the FLSA and New York State fair wage laws provides an additional basis with which to apply equitable principles, and to not permit form to prevail over substance.

In the case of *Garcia v. Pasquareto,* 11 Misc.3d 1, 812 N.Y.S.2d 216 (N.Y.Sup.App.Term 2004), on the issue of whether illegal aliens are entitled to bring fair wage claims, the court acknowledged that wage and hour claims should be paramount:

> Where, as here, an employee seeks to bring a wages and hours claim against an employer, the public policy of the State of New York and the federal government is that the interest in enforcing wages and hours laws on behalf of all workers is paramount.

II.    **Informal Proofs of Claim are consistent with equitable administration of bankruptcy laws.**

The Second Circuit has opined that the central function of a bar date is to facilitate the process of re-organization by informing debtors of what claims exist against them, at the time of obtaining bankruptcy protection, so that they may better plan a path out of bankruptcy. *In re Enron Corp.,* 419 F.3d, 115, 127-128 (2nd Cir. 2005). To the Second Circuit the crucial aspect of a bar date is so the re-organization happens in as efficient a manner as possible. *Id.*

As to proofs of claim, Bankruptcy Rule 3003(c)(2) and (3) provides as follows:

"(c) **Filing proof of claim**

* * * * * *

(2) **Who must file.** Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

14

**(3) Time for filing.** The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed...."

In the case of *In re Gibralter Amusements, Limited*, 315 F.2d 210, 213-214(2ⁿᵈ

Cir. 1963), the Court clarified the equitable principles related to amendment of claims:

> It has long been the law that the bankruptcy court possesses the power to allow the amendment of a defectively filed proof of claim, **even after the expiration of the time designated by the statute for the filing of claims**. Such power existed only if the defectively filed proof of claim was 'sufficient' to constitute a basis for amendment, but the cases evidenced a liberal approach to what would be 'sufficient,' and the principal limitation was that a new cause of action could not be alleged in the amended proof of claim.
>
> *        *        *
>
> Of course we are aware that the bankruptcy court is a court of equity.  But the most astonishing part of the whole case is the contention of appellees that the equities of the situation require a denial of the Bank's petition for leave to amend its claim. *__We think the equities are all the other way around__*.

[Emphasis added, citations omitted]

On the facts herein, it is "astonishing" that the Court chose to enforce form over

substance, thereby depriving the plaintiff-creditors herein of their wages owed them be

the debtor.

A.     **An informal Proof of Claim should inform the court of the existence, nature and amount of the claim**

In the case of *In re W.T. Grant Co, supra*, at pp.420-421, wherein the court

disallowed an informal claim because the writing constituted an entirely new claim, the

court set the following standard:

> Although amendments to proofs of claim should in the absence of contrary equitable considerations or prejudice to the opposing party be freely permitted, such amendments are...allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim. But an absolute prerequisite to allowance of an amendment is the existence of <u>something filed in the bankruptcy court</u> capable of being amended.
>
> .... There must be some informal writing or some pleading in the bankruptcy case, which is a timely assertion by the creditor of his claim against the debtor's

15

estate…[This] must apprise the court of the existence, nature and amount of the claim as well as evidence an intent on the part of the claimant to hold the debtor liable for that claim.[Citations omitted]

In the facts before this court, the timely-filed proof of claim at issue herein clearly indicates that Mario Etchemendy was filing claims on behalf of all the parties listed on the attachment to the B10 form. This attachment includes the name, nature of claim, (either failure to pay overtime or discrimination) applicable statute, and notes that debtor has superior knowledge as to the wage amounts owed, but that all of the claims are estimated between $20-30 million. Further, such form indicates that contingent legal fees are sought, in addition to liquidated damages and punitive damages as permitted by statute.

It is clear that the court was informed of the existence, nature and amount of the claim, yet, the issue was whether procedural requirements had been met:

> Okay, here is what troubles me. As I looked at the proof of claim it appears to be a proof of claim brought on behalf of one named individual but it provides information concerning the claims of other individuals who are not identified _on the face_ of the proof of claim. The proof of claim provides virtually no information on the basis of which a party reading the claim who isn't familiar with the background can ascertain what the claim is based on….I am not aware of authority under Section 501A of the bankruptcy code for an individual creditor to file a claim as a representative of other individuals….certain [exceptions] have been made to permit the filing of class proofs of claim in certain instances[7].

Because the judge's decision overlooked applicable law relative to informal proofs of claim, it should be reversed.

**B.**     **This Circuit merely requires "a writing" in order for a defective claim to be considered an informal Proof of Claim subject to amendment.**

In the case of _In re Sullivan_, 36 B.R. 771,773 (E.D.N.Y.1984), the court emphasized the equitable powers of the court vis 'a vis a proof a claim:

---

[7] The Judge failed to consider the law in this Circuit regarding "informal proofs of claim."

...[I]f the record discloses the timely filing by the creditor of *a writing* which may be construed as a proof of claim, a bankruptcy court is empowered to treat it as a proof of claim notwithstanding its formal defects. "[I]t is *not essential that a document be styled a 'proof of claim*,' or that it be filed in the form of a claim, if it fulfills the purposes for which the filing of proof is required." "Whether formal or informal, a claim must show ... that a demand is made against the estate, and must show the creditor's intention to hold the estate liable." Once a document meeting these criteria has been found to have been timely filed, it may then be amended to conform with the required formalities of a proof of claim... [Emphasis added, citations omitted]

The package that was timely filed by Mario Etchemendy herein disclosed the timely filing of a writing which may be construed as a proof of claim. Under the precedent of this circuit, this document clearly exhibited that demands were being made against the estate on behalf of the similarly situated employees, and clearly indicated their intention to hold the estate liable for their illegally withheld wages.

Because the judge failed to apply the proper standard regarding proofs of claim, his decision should be reversed

**C.    Recent case law confirms that the practice of allowing liberal amendment to informal proofs of claim is still in effect in the Southern and Eastern Districts.**

In *In re Southold Development Corp.*173 B.R. 63(E.D.N.Y.1994)[8], wherein opposition papers, standing alone, were sufficient as an informal proof of claim, the court affirmed that *In re: Grant, supra,* is still the law of the circuit:

> There is no dispute in this case that something *was* filed in the Bankruptcy Court within the statutory period, namely, the "Response ... in Opposition" to the debtor's motion to expunge Morley's claim. The record shows that the response was clearly capable of being amended. Likewise, there is no claim by the debtor or anyone else that no notice was given properly informing those concerned of the nature and extent of Morley's claim.

> Informal proofs of claim may be subject to amendment subsequent to the bar date. Since not every filing constitutes an informal claim subject to such an amendment, there must be "some informal writing or some pleading in the

---

[8] In *In re Southold Development Corp.*, the creditor's claim was a real estate brokerage commission in the amount of $460,000. relative to the sale of Robins Island.

bankruptcy case ... which is a timely assertion by the creditor of his claim against the debtor's estate"

Furthermore, as the Second Circuit observed in *W.T. Grant,* "the timely written assertion or pleading must apprise the court of the existence, nature and amount of the claim as well as evidence an intent on the part of the claimant to hold the debtor liable for that claim" [Emphasis in the original, citations omitted]

D.    **A court of bankruptcy, in passing on the allowance of claims, must sit as a court of equity and be guided by equity and good conscience.**

In *In re Credit Indus. Corp.*, 250 F.Supp.582, 588 (S.D.N.Y. 1965), the

court stated that "A court of bankruptcy, in passing on the allowance of claims,

must sit as a court of equity and must, consistent with the Bankruptcy Act, be

guided by equity and good conscience."  While this case was determined based

on general contract law and the rights of third party beneficiaries, aside from the

rule that requires good conscience on the part of the Court, the Court assessed

the issue of "reliance" on the part of the creditor therein:

In essence, then, where the subordination provision is interpreted under third-party beneficiary contract rules, the contract of the parties is enforced in the bankruptcy proceeding. However, an added element of proof must be shown before the contract is so enforceable; to wit, reliance on the part of subsequent creditors.

While the judge did in fact mention issues of "reliance or lulling" on the part of

the creditor, he chose rather to overlook same, preferring to place the administration of

his court over the needs of the plaintiff creditors before him.

18

1.    **The Judge's ruling was not guided by equity and good conscience**

The Judge herein was more concerned with the administration of his court than the

claims of NYRA's employees whom had systematically been underpaid wages for many

years:

> At this point the proof of claim does not constitute a class proof of claim. And I
> think is subject to being expunged as to those individuals because of the
> procedural requirements of 9014 and rule 123 have not been followed.
>
> I am prepared however, to give you a hearing date…. But I'm letting you know
> now based upon my review that I think it unlikely, no matter what you filed, that
> I'm going to change my preliminary views. [12/20tr]

In addition to wage claims under the FLSA and New York State Labor Law,

many of the claimants listed in the informal Proof of Claim also had intended to file

discrimination suits against NYRA, as the majority of these employees were Hispanic.

Whereas an observer would think that good conscience <u>demanded</u> that these

employees, whom by presumption had been discriminated against and systematically

underpaid by NYRA <u>because</u> of their Hispanic origins, be given their day in court, this

judge thought the contrary:

> This is about orderly bankruptcy administration and a bankruptcy case in
> which…there are issues as to…[whether] there [will] be sufficient dollars to
> satisfy the debtor's commitments under the plan…While there has been some
> reference on the record today that the actual amount is probably not in the twenty
> to thirty million dollar range, the time to reach an agreement as to a fair amount is
> not today, it should have been many, many months ago[9].
> *            *            *
> However, counsel also requests that there be some kind of accommodation made
> in consideration for…the fact that it would be unfair or inequitable for individuals
> who have not filed proofs of claim to now be time barred.
> [76-77]

---

[9] It is clear from the record and submissions that NYRA had in fact been in the process of negotiating many
of these claims prior to the filing of its bankruptcy petition. Thus, these creditors had in fact been working
on an agreement as to the valuation of these claims, of which the court was aware.

When the creditor-plaintiffs' counsel argued the unfairness of denying the multiple plaintiffs' wage claims herein, and that perhaps these plaintiffs had not known that they had such type of claims against their employer, the Judge commented that the merits were weak:

> For individuals who do not recognize that they might have a claim, it further suggests that those claims may not have much substance. [78]

### III.    Under the excusable neglect standard, the creditors herein should be permitted to file late proofs of claim

#### A. Excusable Neglect is an equitable inquiry

The Supreme Court case of *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380,389 113 S.Ct. 1489 (1993) set the standards for excusable neglect relative to proofs of claim:

> The "excusable neglect" standard of <u>Rule 9006(b)(1)</u> governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases. The rules' differentiation between Chapter 7 and Chapter 11 filings corresponds with the differing policies of the two chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization <u>with the aim of rehabilitating the debtor and avoiding forfeitures by creditors</u>. In overseeing this latter process, the bankruptcy courts are necessarily entrusted with <u>broad equitable powers to balance the interests of the affected parties,</u> guided by the overriding goal of ensuring the success of the reorganization. This context suggests that Rule 9006's allowance for late filings due to "excusable neglect" entails a correspondingly equitable inquiry.

In *In re Macmillan, Inc.*, 186 B.R. 35, *6 (S.D.N.Y.1995), the court noted:

> The Supreme Court has defined "neglect" to mean both faultless omissions to act and omission caused by carelessness.  As the Court explained in *Pioneer,* the determination of what is excusable neglect is "at bottom an equitable one;" the Court endorsed a balancing of the following factors: "the danger of prejudice to the debtor, the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith.

> On the facts herein, the Judge appeared determined to throw out the plaintiff-

creditors' claims on numerous bases, and indicated that it was the <u>attorneys</u> who had

botched the procedures rather than assessing the claims before him on the law. The judge,

therefore, did not analyze whether excusable neglect had occurred, but rather, stated:

"there has been no showing, even without a motion, of excusable neglect."

> **IV.    Because this is a Chapter 11 Reorganization, with 100% payment to creditors, there is no prejudice.**

In applying the *Pioneer* test, courts place the greatest weight on whether any

prejudice to the other parties will occur by allowing a late claim. There is no "prejudice

'when all the parties can be placed in the same situation that they would have been in if

the error had not occurred'." *In re Brown,* 159 B.R. 710, 716 (D.N.J.1993)

Allowing plaintiff-creditors' claims would not affect the other creditors in the

proceeding. Under the bankruptcy plan, all the creditors were paid 100% of their claims.

This issue was discussed on the record by the Trustee, wherein h e stated that "it looks

like it might be sufficient to cover the claim base….[a]nd we don't know where the

tipping point is but certainly adding significant dollar claims to this case could be a

tipping point which could create a lot of problems in this case."[72]

It is important to note that on the facts herein the debtor had superior knowledge

as to how much the plaintiff-creditors were owed, as it was in possession of all of their

time cards and punch detail.  The court was aware of this fact, and plaintiff-creditors'

counsel notified the court that the proof of claim had been based upon a list of "similarly

situated employees" provided by defendant-creditor.

Despite the fact that plaintiff-creditors' counsel informed the court that the actual

figure was substantially less than the $20-30 million figure in the proof of claim, the

judge believed that the claims would disrupt the plan:

The Court is aware that there is also a capped number for unsecured claims which would be materially breached if the claim presented by Mr. Etchemendy as a purported class representative were to be deemed a class claim for the eighteen or nineteen supposed members.[76]

> V.    **Under the standards of fair play and substantial justice, the debtor herein should not be permitted to use settlement negotiations as means to obtain information as to the value of its creditors claims, then deny the existence of same due to formalities relative to filing proof of such claims.**
>
> > A.  **Two of the creditors herein were not provided with notice of the bar date, raising substantial issues of due process and fairness in the administration of the bankruptcy laws.**

In *Solow Building Co., LLC v. ATC Associates, Inc.*, 175 F.Supp.2d 465, fn.3,

(E.D.N.Y.2001), the court noted:

> A creditor who is not given notice, even if it has actual knowledge of the reorganization, does not have a duty to investigate or inject itself into the proceedings." Since it has been established that it is reasonable to conclude that plaintiffs enjoy the status of a known creditor, [debtor's] failure to give plaintiffs actual notice of the bankruptcy proceedings renders its prejudice argument meritless.

On the facts herein, NYRA admitted that Ayuso and Cabrales did not receive

notice because they were former employees, and Gazer denied having received notice of

the bar date. The judge stated that because Ayuso and Cabrales were represented by the

same counsel as Etchemendy, notice would be imputed to them.

Thus, the Judge proceeded with a "damned if you do, damned if you don't"

position vis 'a vis the plaintiff-creditors herein. Whereas he erroneously determined that

the proof of claim would not be permitted on the part of a purported class, he used such

class "status" as means to impute notice to these same parties, despite the fact that NYRA

had known about these plaintiffs' claims all along and had noted same in its disclosure

statement.

22

**VI.    The Southern District has Affirmed that a single proof of claim can be filed on behalf of a class.**

In *In re Chateaugay Corp.*, 104 B.R. 626, 628(S.D.N.Y 1989), this court

permitted the filing of proof of claim on behalf of a class of persons who had not filed

individual proofs of claim. In a thoughtful opinion, Judge Lasker stated:

> On November 27, 1987…counsel…filed a contingent and unliquidated proof of claim on behalf of the Iles Plaintiffs ("the Iles claim") in the bankruptcy proceeding. The claim was made on behalf of the individual Iles Plaintiffs and a class of similarly situated women for damages against LTV based on the allegations in the complaint filed in the district court action.
>
>         *            *            *
>
> On April 5, 1988 LTV moved to disallow and expunge the Iles claim and the UAW claim. On June 20, 1988 the bankruptcy court heard and granted the motion. Chief Judge Lifland of the bankruptcy court held that the two claims were class proofs of claim and as such were barred under the Bankruptcy Code.

In reversing the bankruptcy judge,  Judge Lasker reasoned:

> [T]he bankruptcy statute has the goal of facilitating creditor compensation. It would be incongruous for this bedrock policy to be thwarted by reading a procedural limitation into the Code. Bankruptcy also seeks to achieve equitable distribution of the estate. Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the Code than someone with a large, easily filed claim. *Id*, at 632

In *Chateaugay*, similarly situated women employees, former employees and

applicants who had worked and/or applied for work at the debtor defense contractor

appealed an order of the bankruptcy court which disallowed and expunged their claims

of discrimination. While the case indicates that plaintiffs moved for class certification

before the bankruptcy proceeding, it is not clear as to whether same had been decided,

although it is clear that discovery had started, but was not yet complete. The plaintiffs

moved in bankruptcy court to proceed with discovery and trial, which motion was

denied by the bankruptcy judge. *Chateaugay, supra*, at 628.

In *In re Chateaugay Corp.*, the court concluded:

> For the reasons discussed above, I conclude that filing of a proof of claim on behalf of a class is permissible under the Bankruptcy Code and accordingly that the Iles class proof of claim was properly filed. *Id*, at 634.

Because Judge Peck's ruling was inconsistent with this position, it should be reversed.

## **Conclusion**

Based on the foregoing, creditor-appellants herein respectfully request that Judge Peck's decision in all respects be reversed and that the proof of claim herein be deemed effective for all of the plaintiff-creditors therein listed. In the alternative, plaintiff-creditors request that they be permitted to file late proofs of claim.

Dated: Farmingdale, New York
     June 9, 2008

FRANK & ASSOCIATES, P.C.
*Attorneys for Appellants*

By: _____
Neil M. Frank, Esq. (NF-0521)
Barbara Matthews, Esq. (BM4281)
500 Bi-County Blvd., Suite 112N
Farmingdale, New York 11735
Telephone: (631) 756-0400
Facsimile: (631) 756-0547 (fax)
Email: nfrank@laborlaws.com

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June, 2008, a true and accurate copy of the

attached Appellant brief, was served via United States first class mail upon the following:

**Weil Gotshal & Manges LLP**
**Attorneys for Debtor**
**767 Fifth Avenue**
**New York, New York 10153**
**Facsimile: 212-310-8007**
**Attn: Brian S. Rosen, Esq.**
**Attn: Garrett A. Fail, Esq.**

I affirm that the foregoing statements are true, under penalty of perjury.

Dated: Farmingdale, New York
       June 9, 2008

                                        /s/ Barbara Matthews
                                        Barbara Matthews, Esq. (BM4281)

Neil M. Frank, Esq. (NF-0521)
Barbara Matthews, Esq.(BM4281)
**FRANK & ASSOCIATES, P.C.**
*Attorneys for Plaintiff*
500 Bi-County Blvd., Suite 112N
Farmingdale, New York 11735
Telephone: (631) 756-0400
Facsimile: (631) 756-0547
Email: nfrank@laborlaws.com

**UNITED STATES BANKRUPTCY COURT
ON APPEAL TO
SOUTHERN DISTRICT OF NEW YORK**

---

**Eugenia Ayuso, Fabian Cabrales, Richard Gazer and
Donaldo Mack,**

                              **Appellants,**

**v.**

**In re:**

**THE NEW YORK RACING ASSOCIATION, INC.,**

                              **Appellees.**

**Case No.: 08-3785
Judge Kastel**

---

<u>**Brief of Appellants**</u>

FRANK & ASSOCIATES, P.C.
*Attorneys for Appellants*
Neil M. Frank, Esq. (NF-0521)
Barbara Matthews, Esq. (BM4281)
500 Bi-County Blvd., Suite 112N
Farmingdale, New York 11735
Telephone: (631) 756-0400
Facsimile: (631) 756-0547 (fax)
Email: nfrank@laborlaws.com

## Table of Contents

Table of Cases and Authorities............................................................. iii

Introduction   ............................................................................... 1

Facts   ..................................................................................... 1

Argument   ................................................................................. 11

Standard of Review........................................................................ 11

I.    Because the origins of bankruptcy laws and proceedings
are rooted in equity, the Judge's rulings should
be overturned.......................................................................... 11

    A.    The principles of equity require that form does not prevail
over substance...................................................................... 12

    B.    The judge herein did not apply principles of equity in denying
the creditors' request to amend the timely filed proof of claim,
and/or permit late filing of such proofs of claim.................... 12

    1.  It is well-established that Public policy prefers resolution of
matters on the merits............................................................ 12

        a.    Equity permits "informal" proofs of claim in bankruptcy
proceedings.................................................................... 12

        b.    The equitable nature of the creditor-plaintiffs' claims
herein under the FLSA and New York State Labor Laws
required the Judge to permit late filing and/or amendment
of their informal proofs of claim................................ 14

II.    Informal Proofs of Claim are consistent with the comports of
equity in the administration of bankruptcy laws.................. 14

A.    An informal Proof of Claim should inform the court of the
existence, nature and amount of the claim........................... 15

B.    This Circuit merely requires "a writing" in order for a
defective claim to be considered an informal Proof of Claim
subject to amendment............................................................ 16

C.      Recent case law confirms that the practice of allowing
        liberal amendment to informal proofs of claim is still in
        effect in the Southern and Eastern Districts............................    17

D.      A court of bankruptcy, in passing on the allowance of claims,
        must sit as a court of equity and must be guided by equity
        and good conscience.......................................................    18

        1.      The Judge's ruling was not guided by equity and good conscience    18

III.    Under the excusable neglect standard, the creditors herein should
        be permitted to file late proofs of claim...............................    20

A.      Excusable Neglect is an equitable inquiry..............................    20

IV.     Because this is a  Chapter 11 Reorganization, with 100% payment
        to creditors, there is no prejudice.....................................    21

V.      Under the standards of fair play and substantial justice, the debtor
        herein should not be permitted to use settlement negotiations as
        means to obtain information as to the value of its creditors claims,
        then deny the existence of same due to formalities relative to
        filing proof of such claims.............................................    22

        a.      Two of the creditors herein were not provided with notice
                of the bar date, raising substantial issues of due process
                and fairness in the administration of the bankruptcy laws.    22

VI.     The Southern District has Affirmed that a single proof of claim can
        be filed on behalf of a class...........................................    23
        Conclusion...............................................................    25

### Table of Cases

In re Brown, 159 B.R. 710 (D.N.J.1993)……………………...………….    21

In re Chateaugay Corp., 104 B.R.626 (S.D.N.Y.1989)…………………….    11,23, 24

In re Credit Indus. Corp., 250 F.Supp.582, 588 (S.D.N.Y. 1965)…………..    18

Garcia v. Pasquareto, 11 Misc.3d 1, 812 N.Y.S.2d 216
(N.Y.Sup.App.Term 2004)……………………………………………….    14

In re Gibraltor Amusements, Limited, 315 F.2d 210(2nd Cir. 1963)………….    15

In re Harper, 138 B.R. 229, 237 (Bkrtcy.N.D.Ind.1991)……………………    12

Harris v. Albany County Office ( In re Harris) 464 F.3d 263
(2d Cir.2006)…………………………………………………………….    11

Hoffman v. Sbarro, Inc. .982 F.Supp. 249 (S.D.N.Y. 1997)…………………    7

In re Ionosphere Clubs, 124 B.R. 635 (S.D.N.Y.1991)……………………….    11

Integrated Resources, Inc. v. Ameritrust Co. Nat'l Ass'n……………………….    11
(In re Integrated Resources, Inc.), 157 B.R. 66 (S.D.N.Y.1993)

Kelleran v. Andrijevic, 825 F.2d 692 (2nd Cir.1987)……………………….    12

In re Macmillan, Inc., 186 B.R. 35 (S.D.N.Y.1995)…………………..……...    20

Margolis v. Nazareth Fair Grounds & Farmers Market, Inc., 249 F.2d
221 (2nd Cir. 1957…………………………………………………..…...    12

Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. ( In re Enron Corp.)
419 F.3d 115, 124 (2d Cir.2005)……………………………………….    11, 14

Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, U.S. 1939……………….…..    11

Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 113 S.Ct. 1489 (1993)…………………………………………………….. 20

Solow Building Co., LLC v. ATC Associates, Inc., 175 F.Supp.2d 465 (E.D.N.Y.2001)……………………………………………………………. 22

In re Southold Development Corp.,173 B.R. 63(E.D.N.Y.1994)……………… 17

In re Sullivan, 36 B.R. 771 (E.D.N.Y.1984)…………………………………… 16

Matter of Teltronics Services, Inc., 29 B.R.139 (E.D.N.Y.1983)……………….. 12

In re W.T. Grant Co. 53 B.R. 417,422 (1985)………………………………… 13, 15

Bankruptcy Rule 3003(c)(2) and (3)………………………………………….. 14,15

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et. seq*………………… 7