**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

In re:                                :

                                     :       **Chapter 11**

**THE NEW YORK RACING ASSOCIATION INC.,** :       **Case No. 06-12618 (JMP)**

                  **Debtor.**     :

------------------------------------------------------------------------x

Eugenia Ayuso, et al.                 :

                                   :

                  **Appellants,**     :       **08 Civ. 3785 (PKC)**

                                   :

     - against -                 :

                                   :

**The New York Racing Association Inc.**   :

                                   :

                  **Appellee.**      :

------------------------------------------------------------------------x


# BRIEF OF APPELLEE


**WEIL, GOTSHAL & MANGES LLP**
**767 Fifth Avenue**
**New York, New York  10153-0119**
**Telephone: (212) 310-8000**
**Facsimile: (212) 310-8007**

**Attorneys for Appellee**

# TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ............................................................ 1

II.     STATEMENT OF ISSUE PRESENTED  AND APPLICABLE STANDARD OF
        REVIEW ......................................................................................... 2

III.    STATEMENT OF THE CASE.............................................................. 2

        A.      NYRA's Chapter 11 Case............................................................ 2

        B.      The Appellants ........................................................................ 4

        C.      Despite Notice, Appellants Failed to File Timely Proofs of Claim...................... 4

        D.      The Bankruptcy Court Found that Individuals Represented by Frank
                Could Have Filed, But Did Not File, Proofs of Claim........................... 5

        E.      Appellants Sought to Extend the Bar Date  and File New, Separate, Late
                Proofs of Claim ...................................................................... 7

        F.      The Bankruptcy Court Properly Denied the Emergency Motion .......... 8

        G.      Appellants Appeal from the Late Claims Order ............................. 10

IV.     ARGUMENT .................................................................................. 11

        A.      The Late Claims Order Was a Proper Exercise of the Bankruptcy Court's
                Discretion ............................................................................ 11

                1.      The Bankruptcy Court Properly Applied Applicable Law and
                        Properly Found Appellants Had Actual Notice of the Bar Date.............. 13

                        a.      The Mailbox Rule ................................................ 13

                        b.      Imputing Knowledge of an Agent to a Principal ......... 14

                2.      Appellants Failed to Otherwise Establish Excusable Neglect ................ 16

        B.      Appellants Request Relief Beyond the Scope of This Appeal ........... 20

V.      CONCLUSION............................................................................... 22

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

In re Alexander's Inc., 176 B.R. 715, 721 (Bankr. S.D.N.Y. 1995) ..............................13, 14

Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc., 601 F.2d 48, 59 & n.18
 (2d Cir. 1979).....................................................................................................12

In re Dana Corp., No. 06-10354, 2007 Bankr. LEXIS 1934, at *8, 12, 13-14
 (Bankr. S.D.N.Y. May 30, 2007)......................................................................8, 13, 14

In re Drexel Burnham Lambert Group, Inc., 146 B.R. 84, 86 (S.D.N.Y. 1992)........................2, 11, 12

Ericson v. IDC Services, Inc. (In re IDC Services, Inc.), No. 97-3081,
 1998 U.S. Dist. LEXIS 13449, at *6 (S.D.N.Y. Aug. 27, 1998) ...........................................11, 22

Hagner v. U.S., 285 U.S. 427, 430 (1932) ...........................................................................13

Harris v. Albany County Office (In re Harris), 464 F.3d 263, 268 (2d Cir. 2006).............................12

In re Hooker Investments, Inc., 122 B.R. 659 (S.D.N.Y. 1991),
 appeal denied, 937 F.2d 833 (2d Cir. 1991) ....................................................................12

Lawrence v. Wink (In re Lawrence), 293 F.3d 615, 625 (2d Cir., 2002) ......................................12

In re Linzer, 264 B.R. 243, 248 (Bankr. E.D.N.Y. 2001) .........................................................14

In re Malandra, 206 B.R. 667, 673 (Bankr. E.D.N.Y. 1997)................................................13, 14

Meckel v. Continental Resources Co., 758 F.2d 811, 817 (2d Cir. 1985).......................................13

In re Mid-Miami Diagnostics, LLP, 195 B.R. 20, 22-23 (Bankr. S.D.N.Y. 1996) .............................13

Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.),
 419 F.3d 115, 124 (2d Cir. 2005).....................................................................................2

In re Ms. Interpret, 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998)................................................13

Pioneer Investment Serv. Co. v. Brunswick Associates Ltd. Partnership,
 507 U.S. 380, 395, 398 (1993).................................................................................2, 16, 20

R.H. Macy & Co., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993) ............................................13, 14

Trump Taj Mahal Assocs. v. Alibraham, 156 B.R. 928, 939 (Bankr. D. N.J. 1993)) .........................14

U.K. Northridge v. Au Coton (In re Au Coton), 171 B.R. 16, 18 (S.D.N.Y. 1994)..............................2

In re Vestra Indus., Inc., 82 B.R. 21 (Bankr. D.S.C. 1987) ....................................................18

In re Wintrade, Inc., No. 01-13007, 2007 Bankr. LEXIS 3633, at *3, 4-5
 (Bankr. S.D.N.Y. Oct. 22, 2007) ...........................................................................9, 13, 14

STATE CASES

*Honig v. Minotti*, 62 N.Y.S.2d 261 (N.Y. App. Div. 1946)................................................................16

FEDERAL RULES OF BANKRUPTCY PROCEDURE

Fed. R. Bankr. P. 2019 ................................................................................................................18

Fed. R. Bankr. P. 9006 ................................................................................................................11

# I.    PRELIMINARY STATEMENT[1]

This is a simple case involving the Bankruptcy Court's denial of Appellants' motion to file three proofs of claim over eight months beyond the court-established Bar Date in the chapter 11 case of The New York Racing Association Inc. ("NYRA" or "Appellee").  In ruling, the Bankruptcy Court found that there was no evidence of "excusable neglect," as defined by the Supreme Court, and as required by the Bankruptcy Rules.  Instead, the Bankruptcy Court found that Appellants had received ample notice of the Bar Date, had failed to file a proof of claim within the prescribed period, and may have been led astray of their obligations by their counsel.

Now, Appellants seek to resurrect these alleged claims.  Faced with an insurmountable wall of facts and law, Appellants disregard their Statement of Issues on Appeal and misrepresent as the order on appeal an entirely separate order of the Bankruptcy Court – one from which Appellants did not appeal, and one which has long-since become a final, non-appealable order.  In doing so, Appellants have submitted a brief devoid of merit and lacking relevance.  It seems that Appellants hope that, if their efforts with respect to the order on appeal fail, "noise" may get them the relief they seek.  Such attempts at obfuscation are unseemly and should not be countenanced by the Court.

Appellee appreciates the bind in which Appellants' counsel may be as a result of what the Bankruptcy Court identified as "mistakes"[2] in a process that "was not adequately

---

[1] Capitalized terms used but not defined shall have the meanings ascribed to them below.  The "Record" cited herein shall refer to the copy of the record on appeal submitted by Appellee contemporaneously herewith.

[2] Emergency Hr'g Tr. 11:7, Feb. 29, 2008. [R. 1246]

managed."[3]  But neither this Court nor Appellee should be further burdened by dealing with efforts to decrease Appellants' counsel's issues and potential exposure.  The Appeal is frivolous and must be denied.

## II.    STATEMENT OF ISSUE PRESENTED AND APPLICABLE STANDARD OF REVIEW

Appellants appealed from an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), dated March 7, 2008 (the "Late Claims Order"), which denied Appellants' motion to extend the claims-filing bar date and allow Appellants to file proofs of claim against NYRA in NYRA's chapter 11 case.

The issue presented for this appeal is:

Whether the Bankruptcy Court abused its discretion in denying Appellants' request to file proofs of claim where Appellants (a) received actual notice of Bankruptcy Court's order establishing the deadline for all persons to file proofs of claim, (b) failed to timely file a proof of claim, and (c) failed to establish excusable neglect with respect to such failure?[4]

The standard of review of an appeal to the district court of a bankruptcy court's denial of a creditor's motion for leave to file a late claim is for abuse of discretion.[5]

## III.    STATEMENT OF THE CASE

### A.    NYRA's Chapter 11 Case

NYRA is a private, non-profit racing association that owns and operates the three largest racetracks in New York: Aqueduct Racetrack, Belmont Park, and Saratoga Race Course. On November 2, 2006 (the "Petition Date"), NYRA commenced a case under chapter 11 of title

---

[3] Id. at 25:15.  [R. 1260]

[4] Counter-Statement of Issue and Counter-Designation of Record on Appeal 1-2.  [Docket No. 3]

[5] Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 124 (2d Cir. 2005) (citing Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 398 (1993)); U.K. Northridge v. Au Coton (In re Au Coton), 171 B.R. 16, 18 (S.D.N.Y. 1994); In re Drexel Burnham Lambert Group, Inc., 146 B.R. 84, 86 (S.D.N.Y. 1992).

11 of the United States Code (the "Bankruptcy Code").  As of the date hereof, NYRA continues

to manage its properties and operate its businesses as a debtor in possession in accordance with

sections 1107 and 1108 of the Bankruptcy Code.

          Pursuant to an order, dated April 13, 2007 (the "Bar Date Order"), the Bankruptcy

Court established June 4, 2007, as the deadline for all persons and entities to file proofs of claim

against NYRA for claims that arose on or prior to the Petition Date (the "Bar Date").

          NYRA first filed its proposed chapter 11 plan of reorganization (as amended, the

"Plan") with the Bankruptcy Court in October 2007.[6]  The Plan contains, as a condition

precedent to effectiveness, that the aggregate amount of Allowed Unsecured Claims (as defined

in the Plan) be equal to or less than an "Allowed Claim Threshold" of Twenty-Six Million

Dollars ($26,000,000.00).[7]  This condition precedent was considered the "principal issue" that

could stand in the way of confirmation of the Plan.[8]  Estimates in mid-January 2008 showed the

aggregate value of Allowed Unsecured Claims was "close" to the Allowed Claim Threshold and

the "possibility of a significant claim could be detrimental to the possibility that [the Plan] could

be confirmed."[9]  Upon consideration of relevant testimony and evidence, on April 28, 2008, the

Bankruptcy Court determined that the Plan satisfied the requirements of section 1129 of the

Bankruptcy Code and confirmed the Plan.

---

[6] Plan of Debtor.  [R. 2075-2116]

[7] E.g., Third Am. Plan of Debtor, at 25.  [R. 2487]

[8] Hr'g Tr. 27:10, Jan. 11, 2008 [R. 369]; Discl. S. for Plan of Debtor, § VII.B.1 ("Inability to Resolve or Cap Claim Amounts.") [R. 2157]; Discl. S. for Am. Plan of Debtor, § VII.B.1.b. (discussing Etchemendy Claim) [R. 2304]; Discl. S. for Second Am. Plan of Debtor, § VII.B.1.b. (same) [R. 2417]; Discl. S. for Third Am. Plan of Debtor, § VII.B.1.b. (same).  [R. 2552]

[9] Id. at 27:18, 20-21; see also id. at 27:5-28:15.  [R. 369-70]

### B.    The Appellants

Prior to the Petition Date, Frank & Associates, P.C. ("Frank") commenced two lawsuits against NYRA, each alleging that NYRA failed to pay overtime wages to certain of its current and former employees.  Both lawsuits – one in the United States District Court for the Eastern District of New York (the "Federal Action") and one in the Supreme Court of the State of New York, Queens County (the "State Action") – were filed in the name of one of Frank's clients, Mario Etchemendy ("Etchemendy"), on his own behalf and as "class representative of all other employees similarly situated."[10]  Prior to the Petition Date, NYRA filed answers in both actions, denying all allegations and asserting twelve affirmative defenses, including the failure to state a claim.[11]  The commencement of NYRA's chapter 11 case stayed litigation of both actions.

Appellants are current or former employees of NYRA.  As of the Petition Date, only Appellant Richard Gazer ("Gazer") was a current employee;[12] Appellants Eugenia Ayuso ("Ayuso") and Fabian Cabrales ("Cabrales") were no longer employed by NYRA.[13]  Frank purports to represent each of the Appellants as individuals in NYRA's chapter 11 case.[14] Appellants allege they are members of the putative Etchemendy class.[15]

### C.    Despite Notice, Appellants Failed to File Timely Proofs of Claim

The record is clear that NYRA served Gazer with notice of the Bar Date in accordance with the Bar Date Order, which required NYRA to provide notice to, among others,

---

[10] See Federal Action Compl. [R. 833-839]; State Action Compl.  [R. 842-849]

[11] See Federal Action Answer [R. 1058-1062]; State Action Answer.  [R. 1064-1068]

[12] Gazer Aff. ¶ 1.  [R. 951]

[13] Ayuso Aff. ¶ 2 [R. 677]; Cabrales Aff. ¶ 2.  [R. 851]

[14] See, e.g., Emergency Mot. 1, 8.  [R. 669, 676]

[15] Appellants' Br. 1.

certain current employees.[16]  It is undisputed that Frank had notice of the Bar Date.[17]  <u>None of the Appellants ever filed a proof of claim against NYRA prior to the Bar Date.</u>

      **D.**    **The Bankruptcy Court Found that Individuals Represented by Frank Could Have Filed, But Did Not File, Proofs of Claim**

        Frank did file timely one proof of claim (the "<u>Etchemendy Claim</u>"), to which NYRA subsequently objected.[18]  The Etchemendy Claim identified Etchemendy as the creditor,[19] and, at a hearing on December 20, 2007, the Bankruptcy Court found that the claim appeared to be, and was filed as, an individual claim of Etchemendy.[20]  The Bankruptcy Court found that the Etchemendy Claim did not constitute a class proof of claim because, among other things, the procedural requirements of Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 23 of the Federal Rules of Civil Procedure had not been followed.[21]  The Bankruptcy Court further found that Frank "could have filed, but did not, proofs of claim on behalf of those [other] individuals [Frank may have represented]."[22]  Importantly, the Etchemendy Claim did not preserve the claims of other individuals against NYRA.

        In light of the foregoing, Frank acknowledged the Etchemendy Claim suffered from "infirmities," and Frank sought "a brief period to cure those deficiencies"[23] and "an

---

[16] Gomez Aff. ¶ 2, Ex. C.  [R. 1145, 1202]

[17] Appellants' Br. 4 (acknowledging Frank had received notice of the Bar Date).  Etchemendy received independent notice of the Bar Date at his home address.  Gomez Aff. ¶ 2, Ex. C.  [R. 1145, 1191]

[18] Debtor's Second Omnibus Objection to Proofs of Claim ¶¶ 25-28, Ex. F.  [R. 11-12, 26]

[19] Etchemendy Claim 1.  [R. 100]

[20] Hr'g Tr. 21:3-6, Dec. 20, 2007.  [R. 226]

[21] <u>Id.</u> at 21:12-16.  [R. 226]

[22] <u>Id.</u> at 21:9-10.  [R. 226]

[23] <u>Id.</u> at 17:14, 16.  [R. 222]

opportunity to submit further papers" before the Bankruptcy Court ruled finally on the

Etchemendy Claim.[24]  The supplemental response that Frank submitted, however, sought

distinct, affirmative relief: it asked the Bankruptcy Court to allow eighteen individuals, each

purportedly "similarly situated" to Etchemendy, to file proof of claim forms "in their individual

capacities."[25]

At a hearing on January 11, 2008, Frank again confessed to making several

"mistakes."[26]  Nonetheless, the Bankruptcy Court ruled that it had "no reason to deviate from the

tentative rulings previously made" and rendered those rulings final.[27]  The Bankruptcy Court

further found that Frank's supplemental request to allow individual late-filed claims was

"inappropriate … for several reasons."[28]  The Bankruptcy Court observed that the Bankruptcy

Rules required such a request to be made on a motion "setting forth cause,"[29] but here, "[n]o

such motion has been filed…  All that has happened is that counsel has asked that the

Bankruptcy Court today, not just bend the rules but ignore them.  The Court refused to do that."[30]

The Bankruptcy Court further found that, "there has been no showing … of excusable neglect."[31]

---

[24] Id. at 24:23-24.  [R. 229]

[25] Opp'n to Debtor's Mot. to Expunge FLSA Claims 1-3, 10.  [R. 163-65, 172]

[26] Hr'g Tr. 15:2-5, Jan. 11, 2008 (admitting, as mistakes, failures to move for class certification, to timely file individual proofs of claim, and to take other steps, which the Bankruptcy Court found "would have avoided [Appellants'] problem," and conceding Frank was "not familiar" with the applicable Bankruptcy Rules) [R. 357]; id. at 20:18-19 (admitting that its failure to have contact with its clients throughout NYRA's year-long bankruptcy was a mistake).  [R. 362]

[27] Id. at 30:10-12.  [R. 372]

[28] Id. at 34:20.  [R. 376]

[29] Id. at 34:20-23 (citing Rule 9006(b) of the Federal Rules of Bankruptcy Procedure).  [R. 376]

[30] Id. at 34:23-25.  [R. 376]

[31] Id. at 35:19-20.  [R. 377]

> [Frank] elected, for whatever reason, not to file proofs of claim on behalf of those individuals who executed engagement letters.  There may be several reasons why that's so.  One may be that the individuals chose not to file such claims.  One may be that counsel did not believe that it was necessary or appropriate to file such claims.  But the effect is the same; with knowledge of the bar date claims were not filed.  To the extent that claims were not filed by clients of the law firm I don't see any excuse for that.[32]

On January 22, 2008, the Bankruptcy Court entered an  order (the "Final Order"), which, in relevant part, (a) incorporated the findings, conclusions and rulings made at the hearings on December 20, 2007, and January 11, 2008, (b) ordered Etchemendy to take any and all actions required to dismiss, with prejudice, the Federal Action and the State Action, and (c) denied the relief requested by Etchemendy and Appellants' counsel.[33]

Neither Appellants nor their counsel appealed from the Final Order.  Instead, Frank negotiated a settlement of the Etchemendy Claim[34] and dismissed with prejudice the Federal Action and the State Action.[35]  The Bankruptcy Court's findings and the Final Order with respect to the Etchemendy Claim are not the subject of this or any other appeal.[36]

### E.    Appellants Sought to Extend the Bar Date and File New, Separate, Late Proofs of Claim

More than eight months after the Bar Date, Frank filed two "emergency" motions. Specifically, on February 20, 2008, Frank filed one "emergency" motion for entry of an order

---

[32] Id. at 35:7-16.  [R. 377]

[33] Order Granting Debtor's Second Omnibus Objection to Proofs of Claim with Respect to Claim 579 Filed on Behalf of Mario Etchemendy.  [R. 336-442]

[34] Id. (allowing Etchemendy Claim in an amount equal to 0.275% of the amount originally claimed "based upon the agreement reached between NYRA and Etchemendy and announced on the record at the Hearing on January 11, 2008) [R. 338]; Hr'g Tr. 37:2-38:1, Jan. 11, 2008. [R.378-80]

[35] Objection to Emergency Mot., Ex. D (Notice of Dismissal of State Action), Ex. E (Stipulation and Proposed Order of Dismissal of Federal Action).  [R. 1225-1230]

[36] See Notice of Appeal.  [R. 1234-35]

that would extend the Bar Date and permit Ayuso and Cabrales to file, as late proofs of claim, proof of claim forms which were attached to the motions.[37]  A day later, Frank filed a second "emergency" motion, seeking the same relief for Gazer and two other purported creditors of NYRA, Antonio Garcia and Donaldo Mack.[38]  In support, the Emergency Motion alleged that Appellants and Messrs. Garcia and Mack (i) were entitled to actual notice of NYRA's bankruptcy and the Bar Date,[39] (ii) did not receive actual notice of the Bar Date,[40] and, thus, (iii) established excusable neglect as a matter of law, without the need to evaluate the factors set forth in controlling case law.[41]  The only evidence presented in support of the Emergency Motion were affidavits of Appellants stating they did not receive notice of the Bar Date.[42]  Nowhere in the Emergency Motion and at no time during oral argument thereon did Appellants either argue that they had already filed "informal" proofs of claim or request to amend a previously-filed proof of claim.

### F.    The Bankruptcy Court Properly Denied the Emergency Motion

At a hearing on February 29, 2008 (the "Emergency Hearing"), the Bankruptcy Court echoed recent persuasive authority[43] when it reasoned that bar dates

---

[37] Mem. of Law in Supp. of Emergency Mot.  [R. 383-665]

[38] Mem. of Law in Supp. of Emergency Mot.  [R. 669-1001]  Citations to the "Emergency Motion" shall refer this Memorandum of Law.

[39] Emergency Mot. 6.  [R. 674]

[40] Id.  [R. 674]  Frank was forced to withdraw the Emergency Motion with respect to Mr. Garcia, after counsel "clarified that in fact [Mr. Garcia] had received notice of the bar date."  Emergency Hr'g Tr. 7:10, Feb. 29, 2008.  [R. 1242]

[41] Emergency Mot. 7.  [R. 675]

[42] See Emergency Mot.  [R. 669-1001]

[43] Emergency Hr'g Tr. 24:14-25:5, Feb. 29, 2008 (quoting In re Dana Corp., No. 06-10354, 2007 Bankr. LEXIS 1934, at *8 (Bankr. S.D.N.Y. May 30, 2007)).  [R. 1259-60]

are established for a purpose.  The purpose is to give the debtor and the debtor's creditors a fair opportunity to know what claims are being asserted against an estate.  And in this case, the plan of reorganization includes a cap on unsecured claims, as a known and conspicuous condition to the effectiveness of the plan.[44]

The Bankruptcy Court also acknowledged that "the law is very strict, on the letterbox rule," which establishes "an almost insurmountable presumption in favor of receipt when something is mailed."[45]  The Bankruptcy Court concluded as to Gazer:

> [T]he mailbox rule applies.  The presumption has not been overcome.  While it is rebuttable, it is a very strong presumption, and it can only be rebutted by specific facts.  The mere denial in an affidavit that says, "I didn't receive notice," does not do the trick.  Moreover, these individuals are in the same category as Ayuso and Cabrales, as clients of the firm, they too have imputed knowledge.  So, either the mailbox rule applies or imputed notice applies.  And there has been a failure to demonstrate that these individuals did not have, either by imputation or actual notice, notice of the bar date that took place in June of 2007.[46]

The Bankruptcy Court considered the relevant provisions of law and determined that "[t]he law in the Southern District of New York is clear, in providing that knowledge of the attorney is imputed to the creditor client."[47]  The Bankruptcy Court concluded that Appellants "had imputed notice, through counsel, of the bar date, regardless of any other source of notice they may have had"[48]:

> in the case of Ayuso and Cabrales, the actual notice that [Frank] had, as counsel to a purported class of claimants … constituted imputed knowledge, as to all members of the asserted class, and indeed, [Frank], albeit ineffectually, filed a proof of claim that purported to be a proof of claim on behalf of all of the claimants we're now discussing today.[49]

---

[44] Id. at 22:5-11.  [R. 1257]

[45] Id. at 19:11-13.  [R. 1254]

[46] Id. at 24:2-13.  [R. 1259]

[47] Id. at 22:23-25 (citing In re Wintrade, Inc., No. 01-13007, 2007 Bankr. LEXIS 3633, at *4-5 (Bankr. S.D.N.Y. Oct. 22, 2007)).  [R. 1257-58]

[48] Id. at 23:22-24.  [R. 1258]

[49] Id. at 22:14-22.  [R. 1257]

The Bankruptcy Court further found that there had been a "complete lack of any demonstration of excusable neglect."[50]  The Bankruptcy Court acknowledged the calculated, but ultimately fatally-flawed, decision Frank made to not file "separate proofs of claim for individuals whose names [Frank] knew at a time when [Frank] knew the bar date, and [Frank] purported to represent a particular class of claimants."[51]

> What makes this case different from the garden-variety failure to file a proof of claim by the bar date is that this reflects a judgment by counsel for a creditor class.  The judgment that was made was that by simply attaching names to Mr. Etchemendy's proof of claim, that somehow the bar date problem would be managed.  It was not adequately managed, for reasons that the record now amply demonstrates.[52]

> Here, [Appellants' counsel] assumed responsibilities to a group of identified clients who had signed on, with contingent fee arrangements, to be clients of the firm, in a matter that relates to these claims.  These claims would not have had to have been filed, ever, if counsel had done what counsel admittedly didn't do, which was to take appropriate steps, either pre-bankruptcy or post-petition to certify a class.  That was not done.  As a result …, we're now involved in an exercise of scurrying about and trying to protect the record.  That is not excusable neglect.  I'm not going to comment as to what else it might be, however.[53]

On March 7, 2008, the Bankruptcy Court entered the Late Claims Order, which, in relevant part, (a) incorporated the findings, conclusions and rulings made at the Emergency Hearing and (b) denied Emergency Motion in all respects.[54]

### G.    Appellants Appeal from the Late Claims Order

On March 17, 2008, Appellants filed a notice of appeal from the Late Claims Order.[55]  Appellants subsequently identified issues on appeal limited to the Late Claims Order.[56]

---

[50] Id. at 25:6-10.  [R. 1260]

[51] Id. at 10:10-17.  [R. 1245]

[52] Id. at 25:10-16.  [R. 1260]

[53] Id. at 23:10-22.  [R. 1258]

[54] Order Denying Emergency Mot.  [R. 1232-33]

# IV.    ARGUMENT[57]

Despite the "shell game" being played by Appellants in their brief, this Appeal relates only to the Late Claims Order.  The Court's review on appeal is therefore limited to "correctness" of the Late Claims Order only.[58]  Likewise, this Court may not grant relief beyond the scope of the Late Claims Order.[59]

It is evident from the foregoing and from the record that the Bankruptcy Court did not abuse its discretion in denying the relief requested in the Emergency Motion to file proofs of claim where Appellants received actual notice of the Bar Date, failed to timely file proofs of claim, and failed to establish excusable neglect with respect to such failure.  It is equally evident that virtually all of the issues and requests for relief raised in Appellants' Brief are beyond the scope of this appeal and this Court's review.

## A.    The Late Claims Order Was a Proper Exercise of the Bankruptcy Court's Discretion

The Bankruptcy Rules provide that a bankruptcy court may, for cause shown, in its discretion, and on motion made after the expiration of the specified period, permit an act to be done where the failure to act was the result of "excusable neglect."[60]  As a result, on appeal, a

---

[55] Notice of Appeal.  [R. 1234-35]

[56] Statement of Issues on Appeal and Designation of the Record on Appeal 1.  [Docket No. 2]

[57] Although it is neither necessary nor practical to enumerate and dispel each of the baseless, inaccurate, mischaracterized, misstated, or inadmissible statements of fact that permeate Appellants' brief at this time, NYRA reserves all of its rights to do so at oral argument or in subsequent pleadings before this Court or on any subsequent appeal.

[58] Ericson v. IDC Servs., Inc. (In re IDC Servs., Inc.), No. 97-3081, 1998 U.S. Dist. LEXIS 13449, at *6 (S.D.N.Y. Aug. 27, 1998).

[59] Id. at *6-7 (holding the court could not grant "relief beyond the scope of" the order appealed).

[60] FED. R. BANKR. P. 9006(b)(1)(2); Drexel, 146 B.R. 84 ("Thus, the Bankruptcy Court has discretion to allow a movant to file a late proof of claim if the movant establishes that his failure to file was the result of excusable neglect.").

district court may only review the bankruptcy court's decision for abuse of discretion.[61]  The

district court may only set aside the bankruptcy court's decision if it "has a definite and firm

conviction that the court below committed a clear error of judgment in the conclusion it reached

upon a weighing of the relevant factors."[62]  An abuse of discretion occurs only when a court

"applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or

proceed[s] on the basis of an erroneous view of the applicable law."[63]

       In support of their Emergency Motion, Appellants had argued to the Bankruptcy

Court that they had established excusable neglect as a matter of law because Appellants "were

not provided actual notice" of the Bar Date.[64]  Consistent with their strategy, Appellants

determined that they did not need to evaluate the factors set forth in controlling case law and did

not present any evidence of excusable neglect to the Bankruptcy Court.

       Before the Bankruptcy Court, NYRA demonstrated that Appellants lacked

support for their legal conclusion that excusable neglect could ever be established as a matter of

law.[65]  Moreover, as described below, NYRA demonstrated, and the Bankruptcy Court found,

that Appellants' factual premise was flawed: Appellants did receive actual notice of the Bar

Date.  NYRA further showed, and the Bankruptcy Court further found, that Appellants could not

– had they tried – establish that their failure to file proofs of claim was the result of excusable

---

[61] <u>Drexel</u>, 146 B.R. 84; <u>see</u> <u>In re Hooker Invs., Inc.</u>, 122 B.R. 659 (S.D.N.Y. 1991), appeal denied, 937 F.2d 833 (2d Cir. 1991).

[62] <u>Lawrence v. Wink</u> (<u>In re Lawrence</u>), 293 F.3d 615, 625 (2d Cir., 2002); <u>Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.</u>, 601 F.2d 48, 59 & n.18 (2d Cir. 1979).

[63] <u>E.g.</u>, Appellants' Br. 11 (citing <u>Harris v. Albany County Office</u> (<u>In re Harris</u>)¸ 464 F.3d 263, 268 (2d Cir. 2006)).

[64] Emergency Mot. 7.  [R. 675]

[65] Objection to Emergency Mot. 13-14 n.11.  [R. 1014-1015]

neglect. Accordingly, the Bankruptcy Court did not abuse its discretion in denying the Emergency Motion.

> 1.    **The Bankruptcy Court Properly Applied Applicable Law and Properly Found Appellants Had Actual Notice of the Bar Date**

The two principles of law implicated by the Emergency Motion and applied by the Bankruptcy Court in issuing the Late Claims Order are well settled. Appellants' Brief neither discusses nor disputes either. Instead, Appellants' Brief merely states, in summary fashion, that the Bankruptcy Court "applied the wrong legal standards"[66] and repeats the specious assertion that Appellants were not provided notice of the Bar Date.[67]

> a.    **The Mailbox Rule**

"Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail."[68] This is a very strong presumption and can only be rebutted by specific facts, not by invoking another presumption or a mere affidavit to the contrary.[69] A contrary position could

---

[66] Appellants' Br. 11.

[67] Id. at 2, 10, 22.

[68] Dana Corp., 2007 Bankr. LEXIS 1934 at *12; accord, Hagner v. U.S., 285 U.S. 427, 430 (1932) (noting that "the rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed"), cited in R.H. Macy & Co., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993); see also Wintrade, 2007 Bankr. LEXIS 3633 at *3 ("When notice is properly addressed and mailed, a rebuttable presumption of proper receipt arises.") (citing Meckel v. Continental Resources Co., 758 F.2d 811, 817 (2d Cir. 1985); In re Ms. Interpret, 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998)); In re Mid-Miami Diagnostics, LLP, 195 B.R. 20, 22-23 (Bankr. S.D.N.Y. 1996) (collecting cases); In re Alexander's Inc., 176 B.R. 715, 721 (Bankr. S.D.N.Y. 1995).

[69] Dana Corp., 2007 Bankr. LEXIS 1934 at *13; accord Wintrade, 2007 Bankr. LEXIS 3633 at *3 ("Federal courts in New York 'uniformly' take the strict view that an affidavit of non-receipt is not sufficient to rebut the presumption of receipt.") (citing In re Malandra, 206 B.R. 667, 673 (Bankr. E.D.N.Y. 1997); Alexander's, 176 B.R. at 721.

lead to disruption of the "scheme of deadlines and bar dates under the Bankruptcy Code."[70] Indeed, some courts require clear and convincing evidence of an objective nature to overcome the presumption of delivery.[71]  Appellants' Brief completely ignores this principle of law.  The Bankruptcy Court did not.

The Certificate of Service, dated April 19, 2007, executed by the Bankruptcy Court-approved claims and noticing agent, established that Gazer was served a court-approved notice of the Bar Date, a customized proof of claim form, and an explanatory letter from NYRA's Senior Vice President of Human Resources and Labor Relations.[72]  The Bankruptcy Court properly found that Gazer's limited claim of "non-receipt" alone[73] was insufficient to rebut the presumption that Gazer received actual and sufficient notice of the Bar Date.[74]  And, because no additional evidence was offered to prove the alleged lack of notice, the Bankruptcy Court properly found no "excusable neglect" could possibly be established to excuse Gazer for not filing his claim.

### b.    Imputing Knowledge of an Agent to a Principal

Appellants' Brief also disregards the fact that the general rule for imputing an agent's notice or knowledge applies to the relation of attorney and client and applies in bankruptcy cases.[75]  "Knowledge by an agent of a creditor of the pendency of a bankruptcy case

---

[70] R.H. Macy, 161 B.R. at 360 (quoting Trump Taj Mahal Assocs. v. Alibraham, 156 B.R. 928, 939 (Bankr. D. N.J. 1993)).

[71] Dana Corp., 2007 Bankr. LEXIS 1934 at *13-14 (collecting cases).

[72] Gomez Aff. ¶ 2, Ex. C.  [R. 1145, 1202]

[73] Gazer Aff. ¶ 14 ("I never received any of the aforementioned documents...").  [R. 953]

[74] Emergency Hr'g Tr. 24:2-6, Feb. 29, 2008 [R. 1259]; see Dana Corp., 2007 Bankr. LEXIS 1934 at *13; Wintrade, 2007 Bankr. LEXIS 3633 at *3; Malandra, 206 B.R. at 673; In re Alexander's, 176 B.R. at 721.

[75] See In re Linzer, 264 B.R. 243, 248 (Bankr. E.D.N.Y. 2001).

will be imputed to the creditor if his agent was employed to collect the debt or was in charge of its collection."[76]  Indeed, bankruptcy courts have held that a creditor's non-bankruptcy counsel may be deemed an authorized agent for receiving notice of a debtor's pending bankruptcy case.[77]

The Bankruptcy Court applied this principle correctly, as well.  Ayuso's and Cabrales' sworn statements confirmed Frank's representation of Ayuso and Cabrales and their "participation" in the Federal Action.[78]  Frank's knowledge of the Bar Date was not disputed in the Bankruptcy Court or in Appellants' Brief.  Appellants cannot credibly argue that the Bankruptcy Court abused its discretion in imputing Frank's knowledge to its clients.[79]

Interestingly, Appellants' prior knowledge of the Bar Date is further supported by Appellants' latest argument, wherein they contend that the Etchemendy Claim constituted an "informal" proof of claim on their behalf.[80]  If Appellants' original argument – that they lacked knowledge of NYRA's bankruptcy case and related claims process – is to have a chance of withstanding the "Ha-Ha" test, Appellants cannot now argue they relied on the Etchemendy Claim to represent their interests as an informal proof of claim.

---

[76] Id. (citing Honig v. Minotti, 62 N.Y.S.2d 261 (N.Y. App. Div. 1946) ("[N]otice to the attorney authorized to collect the judgment and actually engaged in the collection thereof, was notice to the respondent.")).

[77] Id. at 249 ("The implicit assumption is that when a non-bankruptcy counsel is actively engaged in prosecuting a creditor's claim against the debtor before a non-bankruptcy tribunal, … that is a sufficient nexus to the bankruptcy case to justify imputing agency.  The second implicit assumption is that an attorney licensed to practice law generally is deemed to have sufficient training to discover the appropriate law and rules governing bankruptcy cases.").

[78] Ayuso Aff. ¶¶ 12-13 [R. 678]; Cabrales Aff. ¶¶ 11-12.  [R. 852].

[79] See § III.F., above.

[80] Appellants' Br. 1, 14 (referring to "informal proofs of claim").

### 2.     Appellants Failed to Otherwise Establish Excusable Neglect

On appeal, and for the first time, Appellants adopt the standard established by the Supreme Court for determining whether excusable neglect has been established: courts should consider all relevant circumstances, including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."[81]  Appellants concede that "courts place the greatest weight on whether any prejudice to the other parties will occur by allowing a late claim."[82]

Having failed to present any evidence, or argument, of excusable neglect to the Bankruptcy Court, Appellants now ignore and distort the Record to argue – at the same time – that the Bankruptcy Court "did not analyze whether excusable neglect had occurred," and that the Record shows "there is no prejudice" that could come from allowing Appellants' late claims.[83]  As demonstrated by the Record, these propositions are patently false.

The Bankruptcy Court clearly analyzed whether excusable neglect had occurred. As set forth above, the Bankruptcy Court found that "there ha[d] been a complete lack of any demonstration of excusable neglect, for the failure of these individuals to have filed proofs of claim by the bar date, or to have been included within a class proof of claim before the bar date."[84]  NYRA demonstrated, and the Bankruptcy Court found, that Appellants could not

---

[81] Id. at 20-21 (quoting Pioneer, 507 U.S. at 395).

[82] Id. at 21.

[83] Id.

[84] Emergency Hr'g Tr. 25:6-10, Feb. 29, 2008 [R. 1260]; see § III.F., above.

establish excusable neglect because there was a danger of prejudice to NYRA,[85] because the

cause and length of delay were wholly within Appellants' and Frank's control,[86] and because

neither Appellants nor Frank had demonstrated good faith.[87]

   With respect to "prejudice to NYRA," the Bankruptcy Court found: "The

prejudice is obvious and conspicuous."[88]  The Bankruptcy Court observed that NYRA's "plan of

reorganization includes a cap on unsecured claims, as a known and conspicuous condition to the

effectiveness of the plan."[89]  The Bankruptcy Court further found

> that the very assertion made by [Appellants'] counsel, that these claims, in the
> aggregate might be a half a million dollars, by itself demonstrates that we are
> talking about potentially material claims that could indeed trip the $26 million
> wire that stands between an effective plan and failure.[90]

   With respect to the cause of the delay, the Bankruptcy Court observed that

"[t]hese claims would not have to have been filed, ever, if counsel had done what admittedly

didn't do, which was to take appropriate steps, either pre-bankruptcy or post-petition to certify a

class.  That was not done."[91]  With respect to the length of delay, the Bankruptcy Court

concluded, "[t]his is too late.  And the emergency asserted … appears to be one of the plaintiffs'

own making."[92]

---

[85] Objection to Emergency Mot. ¶ 35 [R. 1016]; e.g., Emergency Hr'g Tr. 22:2-11, 15:20-25, Feb. 29, 2008.  [R. 1257, 1260].

[86] Objection to Emergency Mot. ¶ 36 [R. 1016-17]; e.g., Emergency Hr'g Tr. 23:14-17, 25:25-26:2, Feb. 29, 2008.  [R. 1258, 1260-61]

[87] Objection to Emergency Mot. ¶¶ 37-39 [R. 1017-18]; e.g., Hr'g Tr. 20:14-15, Jan. 11, 2008. [R. 362]

[88] Emergency Hr'g Tr. 22:2-3, Feb. 29, 2008 (emphasis added).  [R. 1257]

[89] Id. at 22:5-11.  [R. 1257]

[90] Id. at 25:20-25.  [R. 1260]

[91] Id. at 23:14-17.  [R. 1258]

[92] Id. at 25:25-26:2.  [R. 1260-61]

With respect to whether Appellants and Frank had demonstrated good faith, the Bankruptcy Court considered all of the following[93]:  Frank admitted it did not have contact with its clients during the course of NYRA's chapter 11 case;[94] Frank failed to comply with the requirements of Bankruptcy Rule 2019 and, in accordance with a case cited by Frank, the Bankruptcy Court should have refused to permit Frank to be heard and held invalid the Emergency Motion and proposed proofs of claim filed by Frank;[95] and each of Appellants' proposed proof of claim suffered from numerous deficiencies that would have required the Bankruptcy Court to subsequently disallow it (each claim stated "presently unknown" no fewer than five times; each claim requested "priority" status, when it was clear that it was not all entitled to priority; and each claim attached documents that provided no support whatsoever for the claim).[96]  These facts established that neither Appellants nor Frank had demonstrated good faith in preserving or prosecuting Appellants' claims.

The minimal support proffered for Appellants' latest arguments is easily parried. Appellants cite only one sentence fragment as support for their first argument, that the

---

[93] See Order Denying Emergency Mot. (The Bankruptcy Court entered the Late Claims Order "upon consideration of" the Emergency Motion, NYRA's objection thereto, statements in support of the relief requested therein, and "all of the proceedings had before the Court."). [R.1232-33]

[94] Hr'g Tr. 20:14-15, Jan. 11, 2008.  [R. 362]

[95] FED. R. BANKR. P. 2019(b)(3); see In re Vestra Indus., Inc., 82 B.R. 21 (Bankr. D.S.C. 1987) (disallowing proof of claim filed by a union "on behalf of the individual members *en masse*," because the union had failed to comply with Bankruptcy Rule 2019(a)), cited in Opp'n to Debtor's Mot. to Expunge FLSA Claims 9.  [R. 171]

[96] Ayuso Aff., Ex. C. [R. 829-50]; Cabrales Aff., Ex. B [R. 928-50]; Gazer Aff., Ex. A [R.979-1001] (proofs of claim forms with attachments: references to the Etchemendy Claim, which does not pertain to Appellants, and Federal Action and State Action complaints, both of which had been dismissed with prejudice).

Bankruptcy Court did not analyze whether excusable neglect had occurred.[97]  Not only does this quote contradict Appellants' argument, but it is excerpted from the hearing on January 11, 2008, the hearing relating to the Etchemendy Claim, not the Emergency Hearing.[98]  Appellants cite three other "facts" to support their second argument, that "allowing [Appellants'] claims would not affect the other creditors in [NYRA's chapter 11] proceeding."[99]  Each is without support from the Record.  Appellants first allege that "all [NYRA's] creditors were paid 100% of their claims."[100]  But NYRA's creditors had not, and have not, been paid.  They will only be paid when NYRA's Plan is consummated, and NYRA can only consummate the Plan if the aggregate amount of its unsecured claims remains below $26 million.[101]  Appellants next allege that excerpts of statements of "the Trustee" somehow support their position.[102]  But no trustee has been appointed in NYRA's chapter 11 case, and, now that the Plan had been confirmed, by law one cannot be confirmed.  The full quote – again from the January 11, 2008 hearing, not the later Emergency Hearing – is of an attorney for the statutory committee of unsecured creditors (the "Committee"), and it unambiguously demonstrates that the Committee was

> concerned about the prejudice to the debtor and the other creditors in the case who have complied with the provisions of the Bankruptcy Code and the rules [and] that a significant claim coming in at this point or a significant delay in

---

[97] Appellants' Br. 21 ("there has been no showing, even without a motion, of excusable neglect").

[98] Hr'g Tr. 35:19-20, Jan. 11, 2008 ("there has been no showing, even without a motion, of excusable neglect").

[99] Appellants' Br. 21.

[100] Id.

[101] E.g., Third Am. Plan of Debtor, at 25.  [R. 2487]

[102] Appellants' Br. 21.

adjudicating claims that may come in at this point could somehow prejudice the confirmation of a plan...[103]

Appellants allege that the Bankruptcy Court believed Appellants were asserting $20-30 million in claims.[104]  But the Record is clear that, at the Emergency Hearing, the Bankruptcy Court was aware that Appellants' claims "in aggregate might be a half a million dollars."[105]  Appellants' Brief had misleadingly quoted – again – from the January 11, 2008 hearing, when Frank was still arguing that a $20-30 million class claim for eighteen or more individuals should be allowed.[106]

The Supreme Court has held that bankruptcy courts do not abuse their discretion in denying a late filed claim where there is "any evidence" of prejudice or "any indication at all" of bad faith.[107]  The Record is clear.  The Bankruptcy Court granted Appellants' request for an emergency hearing "so that [Appellants] would have an opportunity to present their argument and [the parties] could have a full and fully considered hearing."[108]  The Bankruptcy Court analyzed the Pioneer factors and found the prejudice to NYRA was "obvious and conspicuous." There was also ample indication of bad faith.  It therefore was not an abuse of the Bankruptcy Court's discretion to deny Appellants' request to file late proofs of claim.

## B.    Appellants Request Relief Beyond the Scope of This Appeal

Frank and Appellants either unwittingly mistake the nature of this appeal or purposely try to mislead this Court with the statements and arguments in their brief.  They

---

[103] Hr'g Tr. 28:9-14, Jan. 11, 2008 [R. 370].  See also id. at 26:24-28:15.  [R. 368-370]

[104] Appellants' Br. 21.

[105] Emergency Hr'g Tr. 25:21-22, Feb. 29, 2008.  [R. 1260]

[106] Hr'g Tr. 32:13-18, Jan. 11, 2008.  [R. 374]

[107] Pioneer, 507 U.S. at 398 ("To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable.").

[108] Emergency Hr'g Tr. 21:21-23, Feb. 29, 2008.  [R. 1256]

conflate the proofs of claims that the Emergency Motion sought to file with the Etchemendy Claim, the Emergency Hearing with prior hearings, and the Late Claims Order with the Final Order. Fully four of six subsections of Appellants' argument have no relevance whatsoever to the Emergency Motion or the Late Claims Order.[109]

For example, Frank and Appellants incorrectly state that "[t]he proof of claim at issue herein was timely filed on June 4, 2007," i.e., the Etchemendy Claim.[110] They request, at various points in their brief, "that the proof of claim herein be deemed effective for all of the plaintiff-creditors therein listed"[111] or allow the Etchemendy Claim to be deemed a class claim[112] (even though Appellants lack standing to assert claims on behalf of others). At other points, they suggest the Bankruptcy Court should have considered the Etchemendy Claim an "informal claim" of the Appellants and should have allowed Appellants' to amend the Etchemendy Claim.[113] They also incorrectly state that "[t]his appeal ensued" "[a]fter three hearings" and after the Bankruptcy Court "ruled that Etchemendy's claim was viable but those of Ayuso, Cabrales and Gazer were not."[114] They devote an entire section of their brief to argue the uncontested proposition that, in the abstract, "a single proof of claim can be filed on behalf of a class."[115]

---

[109] See Appellants' Br., §§ I, II, V, VI.

[110] Id. at 3.

[111] Id. at 24.

[112] Id. at 23-24 ("Because Judge Peck's ruling was inconsistent with [the conclusion that filing a class proof of claim is permissible under the Bankruptcy Code], it should be reversed.")

[113] Id. at 1, 14-17.

[114] Id. at 4.

[115] Id., §V. Appellants omit, however, any reference to the relevant law and facts that the Bankruptcy Court considered before entering the Final Order – that a class claim shall not be deemed an allowed claim unless certain procedural hurdles are overcome and that Appellants failed to overcome any of these hurdles.

But, as noted above, the Etchemendy Claim and Appellants' request to amend it are not at issue in this appeal. Only the proofs of claim that the Emergency Motion sought to file are, and Appellants' Brief does not even reference these. Furthermore, the Bankruptcy Court conducted only one hearing to consider the Emergency Motion – the Emergency Hearing. Yet, as described herein, Appellants' Brief quotes extensively from two hearings conducted before the Emergency Motion was even filed.[116]

Despite such tactics, this Court's review on appeal is limited to the "correctness" of the Late Claims Order, as "the only order properly appealed from," and this Court cannot grant "relief beyond the scope of that order."[117] Appellants' arguments and requests should therefore be disregarded in their entirety. A contrary result would render the concept of finality of any bankruptcy court order meaningless.

## V.    CONCLUSION

It is obvious that this appeal is merely an extension of what the Bankruptcy Court identified as "an exercise of scurrying about and trying to protect the record."[118] The sole issue on appeal – addressed in under two pages of Appellants' Brief – is whether the Bankruptcy Court abused its discretion in denying Appellants' request to file three fatally-defective proofs of claim nine months after the Bar Date, when it was indisputable, as a matter of law, that Appellants received actual notice of the Bar Date, when Appellants failed to offer any evidence or argument

---

[116] What's more, four of the five quotes that Appellants do cite from the Emergency Hearing are simply Frank's own inaccurate or inadmissible statements, each of which was subsequently challenged and countered on the record. The fifth quote actually demonstrates the Bankruptcy Court properly denied the Emergency Motion after it applied the mailbox rule and imputed knowledge to Frank. See id. 2, 9, 10.

[117] See IDC Servs., 1998 U.S. Dist. LEXIS 13449, at *6.

[118] Emergency Hr'g Tr. 23:19-20, Feb. 29, 2008. [R. 1258]

of excusable neglect, and when the Record demonstrated and the Bankruptcy Court found that excusable neglect could not be established.  There was a danger of prejudice to NYRA, the cause and length of delay were wholly within Appellants' and Frank's control, and neither Appellants nor Frank had demonstrated good faith.  It is clear from the Record that the Bankruptcy Court did not abuse its discretion.

Accordingly, NYRA respectfully requests that the relief requested in Appellants' appeal be denied and that the Late Claims Order be affirmed.

Dated:    New York, New York
          July 28, 2008

Respectfully submitted,


/s/ Brian S. Rosen
Brian S. Rosen, Esq. (BR 0571)
Garrett A. Fail, Esq. (GF 4322)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2008, true and accurate copies of (i) the foregoing Brief of Appellee and (ii) a Courtesy Copy of Record on Appeal were served via United States overnight mail upon the following:

Honorable Judge P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street, Room 2260
New York, New York 10007

and

Neil Frank, Esq.
Peter A. Romero, Esq.
500 Bi-County Blvd., Suite 112N
Farmingdale, New York 11735

I affirm that the foregoing statements are true, under penalty of perjury.


Dated: New York, New York                  /s/ Garrett A. Fail
      July 28, 2008                           Garrett A. Fail, Esq.