UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

THE NEW YORK RACING ASSOCIATION INC.,        Chapter 11
                                              Case No. 06-12618 (JMP)

                        Debtor,

Eugenia Ayuso, et al.

                        Appellants,        08-CV-3785 (PKC)

       -against-

The New York Racing Association Inc.,

                        Appellee.
-------------------------------------------------------------X

## APPELLANTS' REPLY BRIEF

**FRANK & ASSOCIATES, P.C.**
*Attorneys for Appellants*
500 Bi-County Blvd., 112N
Farmingdale, New York 11735
(631) 756-0400

Appellants respectfully submit this Reply Memorandum in further support of their appeal of Judge Peck's order, which denied appellants' motion for leave to file late proofs of claim to recover unpaid overtime wages under the federal Fair Labor Standards Act of 1938 ("FLSA") as amended, 29 U.S.C. §§201 and 216 *et. seq.*, and New York State Labor Law (Labor Law §655).

On June 6, 2006, Mario Etchemendy ("Etchemendy") commenced an action in the United States District Court, Eastern District of New York on behalf of himself and similarly situated employees to recover unpaid overtime wages through a collective action under the FLSA (R.38-49). The allegations underlying the Complaint were that NYRA's employees typically worked successive shifts, performing the duties of two or more positions (R.175-177). Although they regularly worked in excess of forty (40) hours per week, NYRA employees were not compensated at a rate of one and one-half times their regularly hourly rate for hours worked in excess of forty (R.38-49).

For instance, Etchemendy typically worked twelve (12) hours per day, five to six days a week (R.175). During his employment with NYRA, Etchemendy worked from 11:30 a.m. to approximately 6:00 p.m. at Belmont Racetrack as a Jockey Valet, saddling the horses prior to race time (R.175). Beginning in or about 1997, Etchemendy also worked from 5:30 a.m. to 10:30 a.m. at Aqueduct Racetrack as a Clocker, timing the horses (R.175-176). Etchemendy was not compensated for his travel time between the two racetracks (R.176). From July through Labor Day, Etchemendy worked six (6) days a week at Saratoga Racetrack (R.176). Etchemendy received the same weekly earnings regardless of the actual number of hours worked each week (R.176).

1

Etchemendy's claim was typical of similarly situated NYRA employees. Fabian Cabrales was employed as both a Gap Attendant and a Numbers Clerk (R.197-198). Cabrales worked at Saratoga each year, from July through Labor Day, for 12 hours per day, seven days per week (R.197-198). Cabrales received the same weekly rate of pay, approximately $453.00, regardless of the actual number of hours he worked each week (R.197-198). Danny Leonard also regularly worked in excess of forty (40) hours per week, but was not compensated at one and one-half times his regular hourly rate for hours worked in excess of forty (R.200-201). Richard Gazer worked at Belmont Racetrack each morning timing the horses, and at Aqueduct Racetrack in the afternoon making sure the horses scheduled to race the next day had the required number of workouts (R.203-205). Gazer regularly worked in excess of forty (40 hours per week, but was not compensated at a rate one and one-half times his regular hourly rate (R.203-205).

Eugenia Ayuso worked for NYRA as both a Gap Attendant and a Numbers Clerk (R.391). Ayuso received the same weekly rate of pay, approximately $321.30, regardless of the actual number of hours that she worked each week (R.392). Each year from July through Labor Day, Ayuso sometimes worked twelve hours per day, seven days per week (R.392).

Appellants Eugenia Ayuso and Fabian Cabrales each filed a Consent to Joinder form pursuant to 29 U.S.C. §216 in the United States District Court, Eastern District of New York (R.47-47).

After the actions were commenced, the parties agreed to forgo formal discovery while they engaged in substantive and meaningful settlement negotiations. During that

2

period, NYRA provided Appellant's counsel with the names of approximately eighteen (18) employees that it identified as similarly situated to Etchemendy (R.221-R.222).

The state and federal actions were automatically stayed when, on November 2, 2006, NYRA commenced a case under Chapter 11 of the Bankruptcy Code. However, the parties continued their effort to negotiate a settlement. In fact, NYRA provided Etchemendy, through his attorney, with electronic copies of the records that reflect the hours worked by Etchemendy and each of the other 18 similarly situated employees for a six year period (R.95, ¶67).

Moreover, NYRA performed an in-depth analysis of its time records in order to compute the maximum amounts that it asserted each individual would be entitled to recover if liability was established (R.97). NYRA asserted that if Etchemendy were to prevail on his individual wage and hour claims, analyzing the time records in the light most favorable to Etchemendy "yields a total of only $129,667.59 in unpaid overtime." (R.97, ¶71). NYRA estimated that the total for all employees, including Etchemendy, was "only $695,469.55." (R.97, fn. 10).

On or about June 4, 2007, Etchemendy filed a proof of claim (Claim Number 579) against NYRA's chapter 11 estate (R.100). The claim was timely filed within the Bar Date established by the Bankruptcy Court in its Bar Date Order, dated April 13, 2007. The Etchemendy claim was filed on a pre-printed Proof of Claim form that his counsel received from NYRA. The pre-printed form provided in pertinent part:

**Name and address where notices should be sent:**

> **MARIO ETCHEMENDY**
> **INDIVIDUALLY AND AS CLASS REPRESENTATIVE**
> **C/O FRANK & ASSOCIATES, P.C.**

3

**500 BI-COUNTY BOULEVARD, SUITE 112N**
**FARMINGDALE, NY 11735**

The pre-printed form for Etchemendy was the only form that his counsel received

from NYRA. Counsel attached to the form a list of the seventeen other similarly situated

employees, whose names had been furnished to counsel by NYRA during pre-petition

negotiations (R.101-107). The names of the employees listed in the attachment to Claim

579 had been provided to Etchemendy's attorneys by NYRA, and were identified by

NYRA as similarly situated to Etchemendy during the settlement negotiations that

preceded NYRA's bankruptcy filing (R.221-R.222). The attachment indicated that the

employees were asserting claims for unpaid overtime wages under state and federal law

in amounts to be determined, and that the time keeping records necessary to establish the

extent of each claim were in the possession of the Debtor (R.101-107).

For more than six months after the Etchemendy claim was filed, NYRA raised no

objections to the claim and continued to negotiate with Etchemendy's attorneys to

achieve a settlement. On November 6, 2007, some seven months after the Etchemendy

claim had been filed, NYRA filed its Second Omnibus Objection to Proofs of Claim

(R.1-31). NYRA's initial objection to the Etchemendy claim was based solely on its

contention that the estimate of the claim was overstated (R.11, ¶26; R.220). NYRA

raised no objection at that time that the Etchemendy claim should be construed as only a

claim filed on behalf of Etchemendy, or that the claims of the seventeen other employees

listed in the attachment to Claim No. 579 should be expunged because had not been

individually filed.

4

NYRA asserted such objections for the first time in Reply papers (R.80, ¶30) it filed just prior to the first hearing relating to its Objections held on December 20, 2007. Despite the fact that (1) Etchemendy had filed wage and hour claims on behalf of himself and all other similarly situated employees in both state and federal court; (2) NYRA sent Etchemendy's counsel the pre-printed form addressed to "Mario Etchemendy Individually And As Class Representative"; and (3) Etchemendy attached to Claim 579, a list with the names of the seventeen similarly situated employees that had been provided by NYRA to his attorneys, NYRA argued that, because the form listed only "Mario Etchemendy" below "Name of Creditor", Etchemendy was the only beneficial holder of the Etchemendy claim (R.80, ¶30). Despite the fact that this was the only form NYRA had sent to Etchemendy's counsel, NYRA asserted that a similar, or identical claim should have been filed for each of the other seventeen employees (R.81, ¶31).

Judge Peck endorsed this fiction at the hearing held December 20, 2007 (R. 226):

**...even though there are attachments in respect of other allegedly similarly situated employees, the claims as filed is an individual claim. To the extent that the other individuals are represented by the same counsel...counsel could have filed, but did not, proofs of claim on behalf of those individuals...**

However, the Court also acknowledged that NYRA had notice of the claims by virtue of the pre-bankruptcy litigation (R.228):

**...I think it's difficult to make an argument that—unless you have more to say on the point, that I find persuasive simply because the proof of claim didn't provide enough information because it put NYRA on notice of, oh year, it's that litigation we've been defending. So you certainly knew the claims that were---were out there.**

NYRA's objection to the Etchemendy Claim relied in large part upon the holdings of In re Ephedra Prods. Liab. Litig., 329 B.R. 1 (S.D.N.Y. 2005) (R. 84-85). Appellants

argued that *Ephedra*, where the Court found that three separate consumer class actions would potentially interfere with the timely distribution of the bankruptcy estate and should therefore be expunged, was distinguishable on its facts (R.163-173). The considerations that led the Court to expunge the consumer class action claims in that case were not present here. In *Ephedra*, the Court found that the three consumer class actions, one of which was pending in California state court, would delay distribution for years because they would require protracted litigation. The claimants in *Ephedra* sought to proceed on an opt-out basis, which would ostensibly involve thousands of claims. Pre-certification discovery would be required for three putative class claims with three putative class attorneys. If the classes were certified, notice to class members followed by discovery on the merits and the bankruptcy equivalent of a trial would further delay distribution.

The claims here, however, involved a definite group of seventeen (17) employees that NYRA had identified as similarly situated to Etchemendy. NYRA had already acknowledged, indeed urged, that the Court could estimate the claims quickly and efficiently, based on its own analysis of NYRA's time keeping and payroll records (R.984-97).

Moreover, the court in *Ephedra* properly found that the likely total benefit to class members would not justify the cost to the estate of defending the class action lawsuits. The bankruptcy estate was already grossly insufficient to pay the allowed claims of creditors—the plan contemplated distributing about 20 cents on the dollar to general creditors. The putative class members sought restitution of the purchase price of the Ephedra products. The average claim would have been $30.00, entitling each claimant to

6

a distribution of $4.50. Had the claims been allowed, the only real beneficiaries would have been the lawyers representing the class.

By contrast, the cost to NYRA of defending the overtime claims of seventeen employees does not begin to approach the cost of defending multi-state consumer class action lawsuits, and the benefit of recovering unpaid overtime wages would not have been outweighed by the cost to defend the claims (R.165). Finally, whereas Ephedra went out of business and sold all of its assets for the benefits of creditors, NYRA will continue to operate as a viable business entity. Thus, unlike Ephedra, allowing these claims to proceed will serve a deterrent effect and ensure NYRA's compliance with the wage and hour laws going forward.

Despite the fact that (1) Etchemendy had filed wage and hour claims on behalf of himself and all other similarly situated employees in both state and federal court; (2) NYRA had sent Etchemendy's counsel the pre-printed form addressed to "Mario Etchemendy Individually And As Class Representative"; and (3) Etchemendy attached to his claim the names of the seventeen similarly situated employees that had been provided by NYRA to his attorneys, Judge Peck endorsed the fiction that the claim was only an individual claim for Etchemendy, and not a claim on behalf of the other employees (R.226).

Etchemendy's attorneys filed Claim 579 on behalf of Etchemendy and the seventeen similarly situated employees in good faith:

> **it was our belief, that by filing the Etchemendy claim on behalf of, not just some nebulous group of employees, but specifically enumerated and identified employees as—that appear in the Excel spreadsheet that was attached to the claim, we did not know that it was necessary to file an individual claim [form] on behalf of each and every one of those eighteen employees. (R.361-362).**

7

Accordingly, Appellants urged the Court to allow them to cure any defect in the filing of Claim 579, by allowing them to file late individual claims pursuant to Rule 9006(b)(1) (R.169-171). Appellants in effect requested to amend their previously filed informal proof of claim which was attached to Claim 579. Judge Peck refused to entertain Appellants' request for this relief unless they first filed a formal motion (R.376).

On February 20, 2008, Appellants filed an emergency motion on behalf of Ayuso and Cabrales for leave to cure the defect of Claim 579 (R.383-1001). On February 21, 2008, Appellants filed a motion seeking the same relief for Richard Gazer, Antonio Garcia and Donaldo Mack (R.383-1001). At a hearing on the motions, held February 29, 2008, Appellants' counsel reiterated that the defect in Claim 579 was the result of an error made in good faith (R.1244). NYRA had furnished Appellants' attorneys with a claim form addressed only to:

> **MARIO ETCHEMENDY**
> **INDIVIDUALLY AND AS CLASS REPRESENTATIVE**
> **C/O FRANK & ASSOCIATES, P.C.**
> **500 BI-COUNTY BOULEVARD, SUITE 112N**
> **FARMINGDALE, NY 11735**

Accordingly, counsel had no reason to believe that a separate proof of claim form had to be filed for each of the seventeen employees similarly situated to Etchemendy, or that the attachment to Claim 579, which contained the names of those employees and the claims that they were asserting, might be construed as a claim filed on behalf of only Etchemendy.

The authorities cited in the Appellant's initial brief support their position that Claim 579 was filed in good faith, and that the failure to file an individual proof of claim form on behalf of each Appellant was the result of excusable neglect. The allowance of

8

an informal Proof of Claim, such as that which was attached to Claim 579, is to alleviate problems with form over substance---to prevent the potentially devastating effect of the failure of a creditor to formally comply with the requirements of the Code in the filing of a Proof of Claim, when in fact, pleadings filed by the party put all the parties on notice that a claim is asserted by the creditor.  In re Harper, 138 B.R. 229, 237 (Bkrtcy.N.D.Ind. 1991).  This is particularly true here, where two of the Appellants signed Consent to Joinder forms that were filed with Etchemendy's federal court Complaint (R.46-47).

Judge Peck's insistence that, even though the attachment to Claim 579 listed the names of similarly situated employees, the claim as filed was an individual claim on behalf of Etchemendy only (R. 226), is at odds with the principles that apply to the filing of informal claims.  In re Sullivan, 36 B.R. 771, 773 (E.D.N.Y. 1984) (…[I]f the record discloses the timely filing by the creditor of a writing which may be construed as a proof of claim, a bankruptcy court is empowered to treat it as a proof of claim notwithstanding its formal defects.  It is not essential that a document be styled as a 'proof of claim', or that it be filed in the form of a claim, if it fulfills the purposes for which the filing of proof is required.");  In re Southold Development Corp., 173 B.R. 63 (E.D.N.Y. 1994).

Appellants' good faith belief that their informal proof of claim attached to Claim 579 was sufficient to preserve their claims demonstrates that their failure to file an individual proof of claim form was the result of excusable neglect.  Under the excusable neglect standard, Appellants should be permitted to file late proofs of claim.  Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 389, 113 S.Ct. 1489 (1993).

Of the considerations set forth in <u>Pioneer</u>, courts place the greatest weight on whether the Debtor would be prejudiced by the late filing of a claim.[1]    Appellants respectfully submit that NYRA will not be prejudiced as it has had notice of these claims by virtue of the pre-petition litigation; NYRA has urged in its prior pleadings that an estimation of the claims can be performed quickly and efficiently; and NYRA has already estimated the amounts owed to Appellants for unpaid overtime wages based on its own analysis of the time and payroll records.    NYRA has raised the vague specter that allowing the Appellants' claims could tip the Allowed Claim Threshold of Twenty-Six Million Dollars.    While NYRA asserts that estimates in mid-January showed the aggregate value of Allowed Unsecured Claims was "close" to the Allowed Claim Threshold, nowhere does it state a number that would permit this Court to assess to the validity of its assertion (Brief of Appellee at 3).    Presumably, if the aggregate value of the claims was truly "close", then NYRA have stated the actual value of the claims.

Accordingly, Appellants respectfully request that Judge Peck's decision be reversed, and that they be permitted to file late proofs of claim.

---

[1] As for the cause of the delay, NYRA did not raise any objection to the Etchemendy Claim until more than six months after it had been filed.

10

Dated: Farmingdale, New York
       August 18, 2008

                    *Respectfully submitted,*

                    **FRANK & ASSOCIATES, P.C.**
                    *Attorneys for Appellants*

By:      _____
                    Peter A. Romero
                    500 Bi-County Blvd., 112N
                    Farmingdale, New York 11735
                    (631) 756-0400

TO:    WEIL, GOTSHAL & MANGES LLP
       *Attorneys for Appellee*
       767 Fifth Avenue
       New York, New York 10153
       (212) 310-8000

11